NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

MICHAEL DAVENPORT,

    Plaintiff,

v.

NEW JERSEY BOARD OF PUBLIC
UTILITIES, NEW JERSEY
DEPARTMENT OF TREASURY, and
STATE OF NEW JERSEY,

    Defendants.

Civ. No. 18-13687

**OPINION**

THOMPSON, U.S.D.J.

## **INTRODUCTION**

This matter comes before the Court upon the Motion to Dismiss filed by Defendants New Jersey Board of Public Utilities ("Board Defendant"), New Jersey Department of Treasury ("Treasury Defendant"), and State of New Jersey ("State Defendant") (collectively, "Defendants"). (ECF No. 11.) Plaintiff Michael Davenport ("Plaintiff") opposes the Motion. (ECF No. 14.) The Court has decided the Motion based on the written submissions and without oral argument, pursuant to Local Rule 78.1(b). For the reasons stated herein, the Motion is granted.

## **BACKGROUND**

Plaintiff, appearing *pro se*, brings this civil rights action against Defendants, alleging workplace discrimination and retaliation. (Compl. at 7–8, ECF No. 1.) This action centers on Board Defendant's failure to promote Plaintiff, despite his credentials and numerous applications. Board Defendant, the "principle entity responsible for the management and

1

supervision" of Plaintiff's employment, is a state agency operating within Treasury Defendant's realm. (*Id.* at 10.)[1] (*Id.*) Plaintiff alleges that Treasury Defendant oversees Board Defendant, and that both are "directly accountable" to State Defendant. (*Id.*)

Starting in November 1984, Plaintiff has worked continuously for Board Defendant, serving in various capacities as an auditor and/or analyst in its Division of Audits. (*Id.* at 9.) He currently holds the position of "Administrative 4," which is the position below the position of Chief of the Financial Audit Bureau contained within the Division of Audits. (*Id.*) Plaintiff holds a bachelor's degree in accounting and various certifications, such as Certified Fraud Examiner and Certified Public Manager. (*Id.*) He also has earned several distinctions: he received a cash award for exemplary service, earned the highest score on the Supervisory Battery in relation to all other examinees from the Division of Audits, and worked "on some of the agency's highest priority initiatives." (*Id.*)

Plaintiff, a black male, alleges that he applied for various promotions on nine different occasions between 2002 and 2016. (*See id.* at 7, 11–12 (detailing applications on or around June 4, 2002; July 1, 2002; September 23, 2009; October 2, 2009; September 17, 2013; September 15, 2014; February 18, 2015; February 18, 2015; and February 8, 2016).) During each of those occasions, Plaintiff contends that Board Defendant either did not offer him an interview or did not seriously consider him for the position; rather, Board Defendant offered the position to a white candidate. (*Id.* at 11–12.) In fact, Plaintiff submits that, generally, "the presence of African Americans at management level is almost non-existent" at Board Defendant. (*Id.* at 14.)

---

[1] Board Defendant is "legislatively empowered to oversee various fiscal and management operations of regulated utilities providing natural gas, electricity, water[,] telecommunications[,] and cable television within the State of New Jersey." (Compl. at 10.)

Board Defendant, Plaintiff alleges, utilized eight "unlawful administrative tactics to frustrate, harass, and/or intimidate . . . Plaintiff from purs[u]ing management level career opportunities." (*Id.* at 13–14.) Specifically, Board Defendant (1) stalled the job posting and application process to frustrate Plaintiff's candidacy; (2) failed to perform the required annual Performance Assessment Review of Plaintiff; (3) failed to process, review, and finalize some of Plaintiff's work product between 2010 and 2017; (4) failed to acknowledge Plaintiff's work-related extracurricular activities and accomplishments; (5) violated New Jersey rules, procedures, and customs regarding job postings; and harassed Plaintiff by (6) denying legitimate travel expenses without justification, (7) placing a "litigation hold status" on Plaintiff without justification, and (8) threatening not to increase Plaintiff's salary in contravention of longstanding agency practice and policy. (*Id.*)

On September 7, 2018, Plaintiff filed the Complaint. Plaintiff primarily alleges violations of 42 U.S.C. § 1981; Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*[2]; and the New Jersey Law Against Discrimination (the "NJLAD"), N.J.S.A. § 10:5-12. After a slight delay,[3] Defendants filed the instant Motion to Dismiss on April 10, 2019. On May 9, 2019, after Plaintiff failed to respond, the Court directed a letter to Plaintiff advising him that he had until May 20, 2019 to respond to the Motion to Dismiss. (ECF No. 12.) On May 16,

---

[2] As the Court provided in its previous Opinion, Plaintiff relies on 42 U.S.C. § 1981 in the Complaint, but the Complaint alleges that Defendants failed to promote Plaintiff based on his race. (*See* Op. at 1 n.1, ECF No. 7 (citing Compl. at 4).) The Court therefore construed the Complaint as alleging claims under Title VII and § 1981. (*See id.*)

[3] On December 12, 2018, the Court noted Plaintiff's failure to prosecute and advised him that if no action was taken within seven days, the Court would dismiss the case. (ECF No. 3.) No action was taken, so the Court dismissed this case on January 4, 2019. (ECF No. 4.) However, on January 11, 2019, Plaintiff filed a Motion to Reopen the Case (ECF No. 5), which the Court granted on January 17, 2019 (ECF Nos. 7–8).

2019, Plaintiff advised the Court that he intended to oppose the Motion to Dismiss (ECF No. 13), and on May 20, 2019, he did so (ECF No. 14). On May 22, 2019, the Court directed a letter explaining that "in its Opinion on January 17, 2019, the Court construed the Complaint, filed *pro se*, as alleging a claim of discrimination under Title VII," yet "Defendants ha[d] failed to address this claim in their Motion to Dismiss." (Letter at 1, ECF No. 15.) The Court afforded the parties the opportunity to supplement their briefs. (*Id.*) On May 30, 2019, Defendants filed a reply brief, wherein they addressed the Court's Letter from May 22. (ECF No. 16.) Any sur-reply was due by June 5, 2019, but Plaintiff has not responded to the Court's Letter from May 22. Defendants' Motion to Dismiss is currently before the Court.

## LEGAL STANDARDS

### I. Lack of Subject Matter Jurisdiction

Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, a Defendant may move at any time to dismiss the Complaint for lack of subject matter jurisdiction on either facial or factual grounds. *Gould Electronics Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000) (citing *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). In analyzing a facial challenge, a court "must consider only the allegations of the complaint and documents attached thereto, in the light most favorable to the plaintiff." *Id.* (citing *Mortensen*, 549 F.2d at 891). In considering a factual challenge, however, a court "may consider evidence outside of the pleadings." *Id.* (citing *Mortensen*, 549 F.2d at 891). Regardless of the type of challenge, the plaintiff bears the "burden of proving that the court has subject matter jurisdiction." *Cottrell v. Heritages Dairy Stores, Inc.*, 2010 U.S. Dist. LEXIS 104308, at *7–8 (D.N.J. Sept. 30, 2010) (citing *Mortensen*, 549 F.2d at 891).

4

## II. Failure to State a Claim

To survive dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). When considering a Rule 12(b)(6) motion, a district court should conduct a three-part analysis. *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'take note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Iqbal*, 556 U.S. at 675). Second, the court must accept as true all well-pleaded factual allegations and construe the complaint in the light most favorable to the plaintiff. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009); *see also Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786–87 (3d Cir. 2016). However, the court may disregard any conclusory legal allegations. *Fowler*, 578 F.3d at 203. Finally, the court must determine whether the "facts are sufficient to show that plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Iqbal*, 556 U.S. at 679). A complaint which does not demonstrate more than a "mere possibility of misconduct" must be dismissed. *See Gelman v. State Farm Mut. Auto. Ins. Co.*, 583 F.3d 187, 190 (3d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679).

## **DISCUSSION**

Plaintiff alleges violations of three statutes: (1) § 1981, (2) the NJLAD, and (3) Title VII. First, the Complaint fails to state a § 1981 claim against Defendants because they are government entities. Even construing this claim under § 1983, however, Defendants are entitled to sovereign immunity. Similarly, Defendants' sovereign immunity also bars Plaintiff's claim under the NJLAD. Finally, Plaintiff's Title VII claim fails because Plaintiff failed to exhaust his administrative remedies. The Court therefore grants Defendants' Motion to Dismiss.

5

I.      **Construction of Plaintiff's § 1981 Claim**

42 U.S.C. § 1981 ensures "[a]ll persons . . . the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens." This statute protects against intentional discrimination on the basis of race. *Gen. Bldg. Contractors Ass'n, Inc. v. Pennsylvania*, 458 U.S. 375, 391 (1982).

Plaintiff brings a § 1981 claim against Defendants, all state-government entities, "but the express cause of action for damages created by § 1983 constitutes the exclusive federal remedy for violation of the rights guaranteed in § 1981 by state governmental units." *McGovern v. City of Phila.*, 554 F.3d 114, 120–21 (3d Cir. 2009) (quoting *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 733 (1989)). The Third Circuit explicitly held that a plaintiff may bring a § 1981 claim only against a private actor, but not a government actor. *See id.* at 118 (noting that "the fact that § 1981(c) establishes a private right of action against private defendants does not lead to the conclusion that a parallel right must exist for suits against state defendants" (citing *Jett*, 491 U.S. at 731)). Mindful that the Court has an obligation to construe the Complaint, a *pro se* pleading, liberally, *see Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244 (3d Cir. 2013) (explaining the "greater leeway" given to *pro se* litigants), the Court construes the Complaint as alleging a claim under § 1983, rather than § 1981, and addresses its viability below.

II.     **Abrogation of Sovereign Immunity**

"It is well established that the Eleventh Amendment generally bars a civil rights suit in federal court that names the state as a defendant." *J.C. v. Ford*, 674 F. App'x 230, 232 (3d Cir. 2016) (citing *Laskaris v. Thornburgh*, 661 F.2d 23, 25–26 (3d Cir. 1981)). Generally, "there are two ways to divest a state of its Eleventh Amendment immunity, and hale the state into federal

court." *Sacred Heart Hospital of Norristown v. Pennsylvania*, 133 F.3d 237, 242 (3d Cir. 1998). (1) "Congress can abrogate a state's immunity," or (2) the state itself "may waive its Eleventh Amendment immunity and consent to suit in federal court." *Id.* A federal claim, such as one under § 1983, implicates the former; while a state claim, such as one under the NJLAD, implicates the latter.

   A.   *Claim under § 1983*

Plaintiff contends that Defendants receive "some sort of qualifying federal funding," which in turn abrogates their sovereign immunity in accordance with 42 U.S.C. § 2000d-7. (*See* Pl.'s Br. at 3–4, ECF No. 14.) The Court disagrees, however.

Section 2000d-7 abrogates a State's Eleventh Amendment immunity for a violation of, among others specifically enumerated, "any other Federal statute prohibiting discrimination by recipients of Federal financial assistance." § 2000d-7(a). Although Congress "craft[ed] an unambiguous waiver of the States' Eleventh Amendment immunity" by enacting § 2000d-7, *Lane v. Pena*, 518 U.S. 187, 200 (1996), this abrogation does not apply as a catch-all for every federal statute that simply prohibits discrimination; rather the abrogation applies only to those federal statutes that prohibit discrimination explicitly "by recipients of Federal financial assistance." *See Cronen v. Tex. Dep't of Human Servs.*, 977 F.2d 934, 936–37 (5th Cir. 1992) (finding "that Congress intended to abrogate Eleventh Amendment immunity only for statutes that deal solely with discrimination by recipients of federal financial assistance" and thus dismissing § 1983 claim).

Although Title VII abrogated the States' sovereign immunity, so Plaintiff may proceed on this claim in this regard, *see* Title VII, § 2000e(a) (defining "person" as, among others, governments and government agencies); *Fitzpatrick v. Bitzer*, 427 U.S. 445, 453–57 (1976)

(holding that "express congressional authority" abrogated the States' immunity for Title VII claims), § 1983 did not create such an effect, *see, e.g.*, *King v. Board of Education*, 1997 U.S. Dist. LEXIS 22820, at *88 (D. Md. May 30, 1997) (refusing to interpret § 2000d-7 as a "sweeping alteration to § 1983"). Indeed, unlike Title VII, "§ 1983 has not been construed as an abrogation of the States' Eleventh Amendment immunity." *Toth v. Cal. Univ. of Pa.*, 844 F. Supp. 2d 611, 648 (W.D. Pa. 2012) (citing *Quern v. Jordan*, 440 U.S. 332, 342–45 (1979)). The Supreme Court has held that "a State is not a 'person' for purposes of § 1983." *Quern*, 440 U.S. at 365–66; *see also Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989) ("Section 1983 . . . does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties."). "The Eleventh Amendment protects a state or state agency from a § 1983 suit . . . . [and] New Jersey has not waived its immunity in federal court." *Mendez v. N.J. State Lottery Comm'n*, 532 F. App'x 41, 45 (3d Cir. 2013) (citing *MCI Telecomm. Corp. v. Bell Atl.-Pa.*, 271 F.3d 491, 503–04 (3d Cir. 2001); *Port Auth. Police Benevolent Ass'n, Inc. v. Port Auth.*, 819 F.2d 413, 418 (3d Cir. 1987)). Moreover, Plaintiff has failed to identify any federal funds that are directed to Defendants. Accordingly, Defendants are immune from Plaintiff's § 1983 claim.

B. *Claim under the NJLAD*

Defendants have not moved to dismiss Plaintiff's claims under the NJLAD, but these claims implicate sovereign immunity issues that may affect this Court's subject matter jurisdiction. "[A] claim of sovereign immunity advances a jurisdictional bar which a party may raise at any time, even on appeal, and which the court may raise *sua sponte*." *United States v. Bein*, 214 F.3d 408, 412 (3d Cir. 2000); *see also Jones v. United States Dist. Court for the Dist. of Del.*, 649 F. App'x 132, 132–33 (3d Cir. 2016) (affirming district court's *sua sponte* dismissal

8

for lack of subject matter jurisdiction in regard to sovereign immunity). This Court has a "continuing obligation to assess its subject matter jurisdiction" and to "dismiss a suit *sua sponte* for lack of subject matter jurisdiction at any stage in the proceeding." *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 420 (3d Cir. 2010).

Because Plaintiff brings his claims under the NJLAD against state-government entities in federal court, Defendants are entitled to sovereign immunity.

> [W]hile the NJLAD identifies the State and its alter egos as potential defendants in their capacity as an "employer," *see* [N.J.S.A.] § 10:5-5(e), the statute only authorizes the initiation of suits under the NJLAD "in [New Jersey] Superior Court." *Id.* § 10:5-13. Accordingly, because waiver only exists "where stated by the most express language or by such overwhelming implication from the text as [will] leave no room for any other reasonable construction," [*Edelman v. Jordan*, 415 U.S. 651, 673 (1974)], . . . the State of New Jersey retains its Eleventh Amendment immunity.

*Rich v. New Jersey*, 2015 U.S. Dist. LEXIS 61683, at *18–19 (D.N.J. May 12, 2015) (internal citations omitted). Indeed, numerous other courts within this District have held that the State of New Jersey, and its administrative arms, may not be sued in federal court under the NJLAD.[4] As

---

[4] *See, e.g.*, *Jasmin v. State Econ. Dev. Auth.*, 2018 U.S. Dist. LEXIS 126502, at *19 (D.N.J. July 30, 2018) ("[B]ecause 'a plaintiff may not sue the State of New Jersey, or its alter egos, under the NJLAD in federal court,' this Court lacks subject matter jurisdiction over [p]laintiff's NJLAD claim against [the New Jersey Economic Development Authority] . . . ." (internal citation omitted)); *Figueroa v. City of Camden*, 580 F. Supp. 2d 390, 405 n.21 (D.N.J. 2008) (noting that the "NJLAD does not contain the express language required to waive the State's immunity from suit in federal court" (quoting *Bennet v. Atlantic City*, 288 F. Supp. 2d 675, 683 (D.N.J. 2003))); *Bennett*, 288 F. Supp. 2d at 683 ("The NJLAD does not contain the express language required to waive the State's immunity from suit in federal court, therefore, State Defendants retain their immunity."); *Garcia v. Richard Stockton Coll.*, 210 F. Supp. 2d 545, 550 (D.N.J. 2002) ("New Jersey has not stated 'by the most express language' that it is open to private suits under the NJLAD in federal court."); *Rudolph v. Adamar of N.J., Inc.*, 153 F. Supp. 2d 528, 543 (D.N.J. 2001) ("This Court finds it inconceivable that the legislature of New Jersey intended to waive the State's Eleventh Amendment immunity under the NJLAD and allow the State to be sued in federal court in its legislative or executive capacities, while expressly reserving its immunity in these capacities under the New Jersey Tort Claims Act.").

a result of Defendants' sovereign immunity, this Court lacks subject matter jurisdiction over Plaintiff's claims under the NJLAD. Defendants' Motion to Dismiss is granted in this regard.

## III. Failure to Exhaust Administrative Remedies for Title VII Claim

"It is a basic tenet of administrative law that a plaintiff must exhaust all required administrative remedies before bringing a claim for judicial relief." *Robinson v. Dalton*, 107 F.3d 1018, 1020 (3d Cir. 1997) (citing *McKart v. United States*, 395 U.S. 185, 193 (1969)). Courts oblige plaintiffs to exhaust their administrative remedies in an effort "to promote administrative efficiency, respect executive autonomy by allowing an agency the opportunity to correct its own errors, provide courts with the benefit of an agency's expertise, and serve judicial economy by having the administrative agency compile the factual record." *Id.* (quoting *Heywood v. Cruzan Motors, Inc.*, 792 F.2d 367, 370 (3d Cir. 1986)) (internal quotation marks omitted). "The Supreme Court has explained that when Title VII administrative remedies are available, they must be exhausted before a plaintiff may file suit." *Spence v. Straw*, 54 F.3d 196, 200 (3d Cir. 1995).

To pursue a Title VII claim against a state, or its state agency, the aggrieved employee "must [have] file[d] a charge of discrimination with the [Equal Employment Opportunity Commission ('EEOC')] and procure[d] a notice of the right to sue." *Mandel v. M&Q Packaging Corp.*, 706 F.3d 157, 163 (3d Cir. 2013); *see also* 42 U.S.C. § 2000e-5(e)(1) (outlining procedure). In New Jersey, this charge must have been filed within 300 days. *See Cardenas v. Massey*, 269 F.3d 251, 255 (3d Cir. 2001).[5] This procedure is intended to "attempt to resolve the

---

[5] If the aggrieved employee does not live in a state that has an anti-discrimination law, he or she must file the claim to the EEOC within 180 days; however, "because New Jersey has an anti-discrimination law, a claim must be presented to the EEOC within 300 days of the alleged

dispute before involving litigation." *Atkinson v. Lafayette Coll.*, 460 F.3d 447, 453 (3d Cir. 2006). Next,

> [t]he EEOC is required to investigate the charge, and, if it has not resolved the charge within 180 days of filing, must provide the complainant with a "right-to-sue" letter authorizing the aggrieved person to bring a civil action under Title VII. *See* 29 C.F.R. § 1601.28. A private right of action does not arise until 180 days after a charge has been filed, *Occidental Life Ins. Co. of Cal. v. E.E.O.C.*, 432 U.S. 355, 361 (1977), and a complainant may not bring a Title VII suit without having first received a right-to-sue letter. *See Anjelino v. New York Times Co.*, 200 F.3d 73, 87 (3d Cir. 1999). After receiving the letter, a complainant must file a civil action within ninety (90) days from the date of receipt of the letter.

*Beakley v. United States*, 2015 U.S. Dist. LEXIS 98779, at *4 (D.N.J. July 29, 2015). In sum, the aggrieved employee must satisfy *both* requirements before a district court can address his or her Title VII claim: (1) submit a timely EEOC complaint *and* (2) submit a timely suit in district court after receiving a right-to-sue letter. *See Williams v. E. Orange Cmty. Charter Sch.*, 2010 U.S. Dist. LEXIS 27351, at *16 (D.N.J. Mar. 23, 2010).

Here, a fair reading of the Complaint demonstrates that Plaintiff failed to plead that he exhausted his administrative remedies. In the Complaint, wherein it asks whether Plaintiff has filed a charge with the EEOC, Plaintiff responds "N/A." (Compl. at 5.) Furthermore, the Complaint indicates that the EEOC "has not issued a Notice of Right to Sue letter" to Plaintiff. (*Id.*) "Failure to exhaust administrative remedies is an affirmative defense . . . . Under our precedent, it is grounds for dismissal on a Rule 12(b)(6) motion." *Slingland v. Donahoe*, 542 F. App'x 189, 191 (3d Cir. 2013) (quoting *Robinson v. Dalton*, 107 F.3d 1018, 1021 (3d Cir. 1997)). Accordingly, Plaintiff's Title VII claim is dismissed.

---

unlawful employment practice." *Cardenas*, 269 F.3d at 255 n.2 (citing § 2000e-5(e)(1); *Seredinski v. Clifton Precision Prods.*, 776 F.2d 56, 61–62 (3d Cir. 1985)).

**IV.  Plaintiff Is Granted Leave to Amend**

Rule 15(a)(2) of the Federal Rules of Civil Procedure allows amendment of the pleadings with the court's leave, which should be given freely.  *Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000).  Therefore, Plaintiff is granted leave to file an amended complaint, in accordance with Local Civil Rule 15.1(b).

## **CONCLUSION**

For the foregoing reasons, Defendants' Motion to Dismiss is granted.  An appropriate Order will follow.


Date:  06/11/2019                                   */s/ Anne E. Thompson*
                                                     ANNE E. THOMPSON, U.S.D.J.