X to file
of 4:33 pr
7-5-19
Time stamp
broken

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEW JERSEY

## TRENTON VININAGE

| | | |
|---|---|---|
| **MICHAEL DAVENPORT** | ) | |
| | ) | **Case No.  18-13687** |
| **Plaintiff,** | ) | **Amend Complaint** |
| | ) | **Hon. Anne E. Thompson** |
| **v.** | ) | |
| | ) | |
| | ) | |
| **NEW JERSEY BOARD OF PUBLIC UTILITIES,** | ) | |
| **NEW JERSEY DEPARTMENT OF TREASURY,** | ) | |
| **STATE OF NEW JERSEY, NJBPU Commissioners,** | ) | |
| **Richard Mroz, Kenneth Sheehan, Malik Fahmi** | ) | |
| **Unnamed Co-conspirators and subordinates** | ) | |
| | ) | |
| **Defendants,** | ) | |

## NATURE OF THE CLAIM

This action is in pursuit of declaratory, injunctive and equitable relief, which may include monetary damages as prescribed herein or as deemed appropriate by the court to recompense the Plaintiff for the improper and illegal discriminatory employment practices directly and indirectly implemented by the defendants. As such, the Plaintiff claims irreparable personal injury and financial losses by way of the Defendant's long-standing, institutional discriminatory practices, based on race, in violation of the civil rights Act of 1866, 42 USC Section 1981.42 U.S.C. 1983 The rehabilitation Act and the New Jersey Law /Against Discrimination (et seq.) The Plaintiff in this complaint is an African American male who has repeatedly been victimized by The Defendant's failure to promote him to various management level positions which he was qualified to hold in deference to white candidates of similar or lesser standing. It should be noted that while a claim of gender-based discrimination is not being submitted as a part this complaint, the Plaintiff further alleges that the New Jersey Board of Public Utilities (NJBPU, the Primary Defendant), the Department of Treasury and the State of New Jersey (collectively the Defendant's, have shown a clear, premeditated and purposeful aversion to promoting and/or hiring African American males to management level positions. During the Plaintiff's employment with the New Jersey Board of Public Utilities, up to and ending on December 31, 2017, only one African American male had been promoted to a senior management position through the ranks or by direct hire. During the same period, very few African American females were promoted to a senior management or supervisory positions It should be further noted that for the purposes of this complaint political appointments, interdepartmental transfers and/or other patronage type hiring or promoting is not considered.

While the Plaintiff has sufficient and undisputable evidence that the discriminatory and disparate treatment that he experienced and brings to light to by way of this complaint, was present and continuous throughout his entire career with the Primary Defendant, the majority of the evidence and case matter to be presented in this matter pertains to the Defendant's unlawful acts and inactions between the period January 2010 and January 2018. The Defendant's discriminatory policies and practices have irreparably damaged the Plaintiff personally and professionally.

### BACKGROUND:

The Plaintiff filed the original complaint on September 7, 2018. The Complaint listed as Defendants the New Jersey Board of Public Utilities as the primary Defendant and the New Jersey Department of Treasury and the State of New Jersey as equal participatory co-defendants. Each of the Defendants were issued Summons upon which the Defendants made no appearances. On April 10, 2019, the defendants filed a Motion to Dismiss. On May 20, 2019, the Plaintiff filed a Motion in Opposition to Defendants Motion to Dismiss. On June 11, 2019 the Court issued and Order granting the Defendants Motion To Dismiss Plaintiff's Complaint while simultaneously the Plaintiff 14 days to amend said Complaint.

### SUMMARY OF THE CASE

Historically a minute percent of the Primary Defendant's middle management employees has been African American. The number is dramatically less for senior management employment. The Plaintiff submits that these estimates are expected to be consistent for all three defendants. The Defendants, as a whole, have historically refused to hire or promote African Americans to positions of top-level supervisors, middle managers or senior managers, based on race. This situation exists despite the fact that a substantial percentage of the Defendant's workforce is African American, However, only small percent hold management positions at any level. The Plaintiff's direct employer has never had an African American middle manager or senior manager in the Division of Audits where the Plaintiff was directly employed. Over the thirty-three years of his employment, the Plaintiff has applied for several management level positions. In each instance, the Agency failed to promote the Plaintiff on the basis of race in deference to white candidates, in line with long standing agency practice and custom, and in violation of the Civil Rights Act of 1866 42, USC Section 1981, 42 U.S.C. 1983 and the New Jersey Law Against Discrimination.  Most recently the Plaintiff was denied a promotion to the position of Chief, Bureau of Financial Audits the specific area in the agency where he worked for more than 33 uninterrupted years without negative incident or unfavorable evaluation to a while male who lacked both direct experience and familiarity with the day to day operations of the Agency and without the benefit of a significant working knowledge of public utility regulation. The Defendants attempted to disguise their illegal activities by

voiding the position of Chief, Bureau of Financial Audits, at the eleventh hour and replacing it with the position of Chief, Burau of Management Audits, a position that the Plaintiff also applied for but was denied acknowledgement, interview or serious consideration. based on race. Moreover, the Defendants acts in this regard were performed without detailed or enough explanation to the Plaintiff. During the various application periods and interview processes, the Primary Defendant also engaged in numerous illegal, unlawful and unfair employer workplace tactics designed and effected to frustrate the Plaintiff from pursuing certain opportunities.

## PARTIES

<u>PLAINTIFF</u>

The Plaintiff, Michael Davenport, began his direct employment with his employer in November 1984 working under the direct authority and supervision of the New Jersey Board of Public Utilities. The Plaintiff has been employed exclusively by the Primary Defendant in excess of 33 consecutive years without interruption in the Division of Audits where he serves in various capacities as an Auditor/ Analyst. The Plaintiff has either worked directly or been materially involved in every aspect of Division of Audits activity which included special projects and various other high priority assignments in the Bureau of Financial Audits and the Bureau of Management Audits. The Plaintiff's work experience, education and performance record qualify him as having advanced standing in the Division of Audits and within the agency as a whole.

The Plaintiff's achievement and accomplishment includes, but are not limited to:

- The Plaintiff currently hold the position of Administrative 4. This is typically the next progressive step to the position Chief, Bureau of Financial Audits.
- The Plaintiff holds a BA Degree in Accounting from Rutgers University.
- The Plaintiff held a long-term designation as a Certified Fraud Examiner.
- The Plaintiff is a Certified Public Manager (CPM). The Program was created to train and prepare State of New Jersey employees to be future managers. CPM graduates are typically acknowledged publicly by the Defendant's. The Plaintiff's completion was not acknowledged. CPM graduates are typically

offered management positions by the Primary Defendant. The Plaintiff was not promoted or offered a management position.

- The Plaintiff is a graduate of the Sloan Foundation Public Performance Measurement (PPM) Program at Rutgers University. (3.9 Grade Average)
- The Plaintiff was a recipient of the State's one-time cash award (Bonus) for exemplary service. The Plaintiff was the only person in the Audit Division to receive such a distinction.
- The Plaintiff successfully passed the state's Supervisory Battery Exam twice. On the second occasion his score led all Division off Audits candidates
- The Plaintiff was designated as audit division representative on some of the agency's highest priority initiatives.

## PARTIES

### DEFENDANTS

The Defendant New Jersey Board of Public Utilities (The Primary Defendant, NJBPU, BPU) is a State agency operating in but not of the Department of Treasury legislatively empowered to oversee various fiscal and management operations of regulated utilities providing natural gas, electricity, water telecommunications and cable television service within the State of New Jersey. It was the direct hiring authority of the Plaintiff. Moreover, it is principle entity responsible for the management and supervision of the Plaintiff pertaining to all matters and all time periods referenced herein. Its offices serve as the primary work station of the Plaintiff.

The Defendant New Jersey Department of Treasury (Treasury) is an executive branch level department within the State of New Jersey. It is one of New Jersey's oldest and powerful state entities. It is charged with the responsibility of formulating and managing the State's budget and the related responsibilities pertaining to the generation and collection of state revenue. It also has the powerful role of coordinating, authorizing and disbursing appropriations to all state departments and agencies. It is the parent state agency overseeing the operations of the Defendant New Jersey Board of Public Utilities.

The Defendant State of New Jersey is the employer in fact. By way of Executive Branch authority, it directs, administrates, coordinates, monitors and influences

the operations of all fifteen state departments and various other boards, agencies and commissions including Defendants NJBPU and Treasury. It is the primary administration and policy setting source effecting all state employees and New Jersey state government process.  Consequently. all Department, Commissions, Boards and other state entities represent, report to and are directly accountable to the State of New Jersey by way of the Executive Branch.

Defendant Board of Public Utilities Commissioners acting in individual capacities.

Defendants Richard Mroz as a former President of the NJBPU

Defendant Kenneth Sheehan as former Chief of the NJBPU

Defendant Malik Fahmi as Director of Administration and Human Resources

### JURISDICTION AND VENUE

The court has jurisdiction over this action pursuant to the Civil Rights Act of 1866 42, U.S.C. Section 1981. 42, U.S.C. 1983, 42 U.S.C. 2000 d, 42 U.S.C. 2000 e et al The venue is proper and appropriate given that the majority material events in this matter occurred in this district

### REASON FOR ACTION

The Plaintiff moves for an Order from this Court pursuant to Rule 15A, Federal Rules of Civil Procedure, to file an Amended Complaint in regard to the above-referenced matter. The reasoning and basis for the amended filing has been set-forth in the attached memorandum. As such, the Plaintiff herein any by way of the attached supporting memorandum will request leave to amend the Plaintiff's original Complaint on two fronts.

First, the Plaintiff seeks to correct deficiencies of a material nature that are relevant and critical to the proper articulation of the Plaintiff's position, Second, the Plaintiff seeks to amend the original complaint with clarifying facts regarding to the Court's subject matter jurisdiction.

By granting of the amendments requested herein the Court will allow for a more complete and accurate account of the events and actors pertinent to the Plaintiff's claims and resultant injuries. While the various offenses have been made clear in the original complaint the court record is deficient in terms of certain clarifying data and the actions and roles of several known and unknown persons serving as co-conspirators in this matter. Therefore, the addition of the new information and parties to the Complaint and record is relevant and crucial. Furthermore, to procedurally account for those state actors directly responsible for the offenses and injuries to the Plaintiff, an amendment to the specific federal Statute is necessary, just and appropriate.


## FACTUAL ALLEGATIONS

During his employment, the Plaintiff either refused or avoided several lucrative job opportunities in the private and/or government sectors out of commitment to the Agency and in the pursuit of a career in public service. The Plaintiff's commitment to the Defendants was clear, obvious and focused from the very beginning. The Plaintiff actions and written communication made it clear to the Defendants that's he was ready and willing for a management level position and its additional responsibilities.  During the Plaintiff's career to date he has regularly gone above and/or beyond the call off duty by volunteering or initiating new work or work-related responsibilities or pushing for additional job-related training or acquiring it at his own expense. After working his way to the top of the arduous civil service professional staff series, the Plaintiff was ready and well prepared for a management level position. Instead he was greeted by the Defendant's race-based 'Management Glass Ceiling'. While it had been glaring apparent to the Plaintiff that management opportunities were not being fairly and/or proportionately offered to African American professional staff, there was a misplaced attitude of commitment, loyalty and unfounded optimism that drove the continuing pursuit of this unrealistic objective. While many other of the Plaintiff's similarly situated African American professional colleagues transferred, quit or retired in frustration, the Plaintiff stayed the course.

The Plaintiff first made his management aspirations known to the Primary Defendant on June 4, 2002 when he applied for the position of Section Supervisor Fiscal Resources. Then, on July 1, 2002, he applied for the positions of Chief, Bureau of Financial Audits Division of Audits and Chief, Bureau of Accounts Division of Telecommunications in 2002, In all three instances his letter of interest and resume were ignored. He was not offered an interview or given any serious consideration. The positions were awarded to white candidates of similar standing.

On September 23, 2009, the Plaintiff applied for the position Section Supervisor, Fiscal Resources. On October 2, 2009, the Plaintiff applied for the position of Assistant Director, Division of Energy. The Plaintiff's application for Assistant Director was ignored. No interview or consideration was given to the Plaintiff. The positions were awarded to white males of similar standing.

On September 17, 2013, the Plaintiff applied for the positions of Chief, Bureau of Management Division of Audits and Supervising Administrative Analyst. Both letters of interest and resume were ignored by the Primary Defendant without explanation. The positions were awarded to white males of similar standing.

On September 15, 2014, the Plaintiff applied for the position Director, Division of Audits. The Plaintiff reapplied to the same posting on February 18, 2015. The Plaintiff's letters of interest and resumes in both instances were ignored. No interview or serious consideration was offered or given to the Plaintiff. The position was awarded to a white candidate of similar standing.

On February 18, 2015, the Plaintiff applied to the above-referenced position of Chief, Bureau of Financial Audits Division of Audits. The Plaintiff's letter of interest and resume were ignored, with no interview, consideration or explanation given.

On February 8, 2016, the Plaintiff reapplied for the positions of Chief, Bureau of Financial Audits Division of Audits and Chief, Bureau of Management Audits Division of Audits. The Plaintiff's letter of interest regarding the position of Chief, Bureau of Management Audits was not acknowledged or seriously considered by the agency and no interview was offered. The plaintiff was reluctantly offered an interview for the position of Chief, Bureau of Financial Audits but denied the Plaintiff the promotion without sufficient reasoning or explanation.  In a hand delivered letter dated October 20, 2016 which was also conspicuously sent to the

Plaintiff's home email and not allowed to go through the Primary Defendant's email system as did all other correspondence in this matter, the Defendant notified the Plaintiff he would not be offered the promotional opportunity but did not provide any other detail to support the failure to promote. The position was the quietly voided at the 11th hour without explanation and reclassified to the above reference position of Chief, Bureau of Management Audits of which the Plaintiff applied for but was denied an interview. The position was awarded to a white male candidate without agency experience or advanced standing.

*The Plaintiff humbly submits that the unique nature of public utility regulation and process and the Plaintiff's thirty-three years of continued service in the source Agency of the promotional opportunity translates into a superior standing. Thus, it can be concluded that the Plaintiff the was the most qualified person available to occupy the position of Chief, Bureau of Financial Audits.*

The Defendants also used various other unlawful administrative tactics to frustrate, harass and/or intimidate the Plaintiff from pursing management level career opportunities. The various tactics deployed included but was not limited to:

1. Stalling the position posting and application process to frustrate the Plaintiff's candidacy.

2. For a period exceeding six years, the Primary Defendant failed to perform the required annual Performance Assessment Reviews (PARS) denying the Plaintiff an opportunity to build an official performance profile. When the evaluations were being properly performed the Plaintiff consistently received above average ratings. *The Plaintiff humbly submits on technical grounds the that Primary Defendant's and the amended additional Defendants, acting in their individual management capacities, negligent failure to perform the State mandated PARS voids any defense claims involving or related to the Defendant's reasoning for failing to promote based on any performance or work-related rationalizations.*

3. the Primary Defendant failed to process, review and finalize the majority of the Plaintiff's work product during the period 2010 thru 2017, Several audits were submitted to management, but they were stalled and never processed for approval. In addition, the Plaintiff was not allowed to perform or complete any substantive work for a period of over 6 years. Prior to the Primary Defendant's

curtailment of the Plaintiff's activities, the Plaintiff had been highly active and participated in some of the agency's most high profile and high priority initiatives and projects  By requiring the Plaintiff  to sit idly for such an extended period without cause the Defendants Plaintiff denied the Plaintiff access to the recognition, visibility and credibility from completed work that would normally be received and a significant deciding factor in a fair and lawful promotional process.

***The Plaintiff humbly submits on technical grounds the that Primary Defendant's and the amended additional Defendants, acting in their individual management capacities, negligent failure to review or acknowledge or assign the Plaintiff's work product voids any defense claims involving or related to the Defendant's reasoning for failing to promote based on any performance or work-related rationalizations.***

 4. Failing to acknowledge the Plaintiff's work-related extracurricular activities and accomplishments.

5. Routinely violating the State of New Jersey rules, procedures and customs regarding official job postings by utilizing a race driven agenda with regard to posting a position positions, interviewing candidates and hiring decision making.

6. Harassing the Plaintiff by denying legitimate travel expenses without cause.

 7. Harassing the Plaintiff by placing a litigation hold status on the Plaintiff without reasonable cause for an extended period.

8. Harassing the Plaintiff during the interview process by unjustifiably threatening to implement no salary increase to the promotional Chief, Bureau of Financial Audits promotional opportunity if accepted by the Plaintiff in sharp contrast to salary to long standing agency practice and policy. The meeting was conducted in private with one witness but no paper trail.

The primary Defendants 100 plus year history of failing to fairly promote, hire interview, recruit and simply seriously consider African American for management level positions is as shameful as it is unlawful. Furthermore, if one subtracts the effect of temporary political appointments and patronage hiring, the presence of African Americans is at management level is almost non-existent. Based on the Plaintiff cursory analysis of the aggregate issue, it has been surmised that the same holds true for the Defendants as a group. In light of the above referenced

conduct by the Defendant's a clear pattern of discrimination against the Plaintiff has been identified and summarized. From a historical context the Defendants individually and collectively have shown an outright aversion to promotion, hiring and support of African Americans at the management level. The Plaintiff humbly reasserts that the Defendants, upon noticing the Plaintiffs commitment to advancement to management ranks within the agency, deployed various counter-measures based on the Plaintiff's race to thwart the Plaintiffs progress and efforts. The Defendants have openly and brashly displayed targeted, reckless, negligent unfair employer customs, operations and discriminated practices against the Plaintiff based on race. Most prominately, from the period 2009 to 2016, the Plaintiff applied for numerous management level positions all of which he was either adequately or exceptionally qualified to hold. However, in each instance, he was denied the promotion without cause on the basis of race. In most instances the Plaintiff was not interviewed, acknowledged (ignored) and/or simply not seriously considered for the position despite the Plaintiff's direct experience working in the agency and despite having met all the requirements of the job posting by way of direct experience, job performance and education.

Additionally, the Plaintiff seeks to submit additional information clarifying the Plaintiff's position and arguments regarding Abrogation of Sovereign Immunity. Specifically, in the Plaintiff's opposition to the Defendant's Motion to Dismiss, the Plaintiff Original Complaint submitted the following:

### *THE DEFENDANT'S WAIVED 11TH AMMENDMENT PROTECTION BY ACCEPTING FUNDS DISPERSED UNDER CONGRESSIONAL SPENDING POWER.*

*In accordance with The* <u>United States Code</u>*,* <u>Title 42</u>*,* <u>Section 2000d-7</u> *. if a state or local government entities receive federal funding for whatever purpose, they cannot claim sovereign immunity if they are sued in federal court for discrimination. In Doe v. Nebraska in the* <u>Eighth Circuit</u> *court ruled that, as long as the state entity receives federal funding, then the sovereign immunity for discrimination cases is not abrogated, but voluntarily waived. In this regard all of the Defendants have received some sort of qualifying federal funding, grants or assistance during the relevant periods outlined in the Complaint.*

The Court's Order dated June 11, 2019 reasoned that that " Plaintiff has failed to identify any federal funds that are directed to the Defendants." In this regard the Plaintiff amends as follows:

The Plaintiff submits that Defendant NJBPU receives federal funding and or assistance that directly relate to employment practices and non-discrimination by employers within the state of which the Defendant is one of the largest. Funding from the Workforce Innovation and Opportunity Act (WIOA) of 2014 requires that the State identify regions in the State, after consultation with the local boards and c hief elected officials in the local areas. During the period 2011 to 2017, Defendant State of New Jersey received nearly $2,000,000.00 in federal grant assistance.

According to the funding agencies website, the Plaintiff notes the following:

SEC. 188. NONDISCRIMINATION.

a.  IN GENERAL. —
1.  FEDERAL FINANCIAL ASSISTANCE. — For the purpose of applying the prohibitions against discrimination on the basis of age under the Age Discrimination Act of 1975 (42 U.S.C. 6101 et seq.), on the basis of disability under section 504 of the Rehabilitation Act of 1973 (29 U.S.C. 794), on the basis of sex under title IX of the Education Amendments of 1972 (20 U.S.C. 1681 et seq.), or on the basis of race, color, or national origin under title VI of the Civil Rights Act of 1964 (42 U.S.C. 2000d et seq.), programs and activities funded or otherwise financially assisted in whole or in part under this Act are considered to be programs and activities receiving Federal financial assistance.
2.  PROHIBITION OF DISCRIMINATION REGARDING PARTICIPATION, BENEFITS, AND EMPLOYMENT. — No individual shall be excluded from participation in, denied the benefits of, subjected to discrimination under, or denied employment in the administration of or in connection with, any such program or activity because of race, color, religion, sex (except as otherwise permitted under title IX of the Education Amendments of 1972), national origin, age, disability, or political affiliation or belief.
3.  PROHIBITION ON ASSISTANCE FOR FACILITIES FOR SECTARIAN INSTRUCTION OR RELIGIOUS WORSHIP. — Participants shall not be employed under this title to carry out the construction, operation, or maintenance of any part of any facility that is used or to be used for sectarian instruction or as a place for religious worship (except with respect to the maintenance of a facility that is not primarily or inherently devoted to sectarian instruction or religious worship, in a case in which the organization operating the facility is part of a program or activity providing services to participants).
4.  PROHIBITION ON DISCRIMINATION ON BASIS OF PARTICIPANT STATUS. — No person may discriminate against an individual who is a participant in a program or activity that receives funds under this title, with respect to the terms and conditions affecting, or rights provided to, the individual, solely because of the status of the individual as a participant.
5.  PROHIBITION ON DISCRIMINATION AGAINST CERTAIN NONCITIZENS. — Participation in programs and activities or receiving funds under this title shall be available to citizens and nationals of the United States, lawfully admitted permanent resident aliens, refugees,

asylees, and parolees, and other immigrants authorized by the Attorney General to work in the United States.

b.  ACTION OF SECRETARY. — Whenever the Secretary finds that a State or other recipient of funds under this title has failed to comply with a provision of law referred to in subsection (a)(1), or with paragraph (2), (3), (4), or (5) of subsection (a), including an applicable regulation prescribed to carry out such provision or paragraph, the Secretary shall notify such State or recipient and shall request that the State or recipient comply. If within a reasonable period of time, not to exceed 60 days, the State or recipient fails or refuses to comply, the Secretary may —

1.  refer the matter to the Attorney General with a recommendation that an appropriate civil action be instituted; or

2.  take such other action as may be provided by law.

c.  ACTION OF ATTORNEY GENERAL. — When a matter is referred to the Attorney General pursuant to subsection (b)(1), or whenever the Attorney General has reason to believe that a State or other recipient of funds under this title is engaged in a pattern or practice of discrimination in violation of a provision of law referred to in subsection (a)(1) or in violation of paragraph (2), (3), (4), or (5) of subsection (a), the Attorney General may bring a civil action in any appropriate district court of the United States for such relief as may be appropriate, including injunctive relief.

d.  JOB CORPS. — For the purposes of this section, Job Corps members shall be considered to be the ultimate beneficiaries of Federal financial assistance.

e.  REGULATIONS. — The Secretary shall issue regulations necessary to implement this section not later than 1 year after the date of enactment of the Workforce Innovation and Opportunity Act. Such regulations shall adopt standards for determining discrimination and procedures for enforcement that are consistent with the Acts referred to in subsection (a)(1), as well as procedures to ensure that complaints filed under this section and such Acts are processed in a manner that avoids duplication of effort.

**The Plaintiff contends that Defendant State of New Jersey as the administrator, direct recipient and one of the state largest employers is integrated and bound to its terms and conditions, rules and requirements by virtue of receiving the programs benefits.**

Defendant New Jersey Board of Public Utilities receives substantial federal assistance from the US Department of Transportation by way of its Pipeline & Hazardous Materials Safety Administration (PHMSA). The direct beneficiaries of this funding are the citizenry of the State of New Jersey, the NJBPU and its employees. During the period 2008 thru 2016 Defendant NJBPU received in excess of $8 The,000,000.00 in federal grants and other assistance from the programs. According to its website the Plaintiff notes the following:

**PHMSA provides grant opportunities designed to improve damage prevention, develop new technologies, or otherwise improve pipeline safety.**

- State Pipeline Safety Program Base Grants – CFDA 20.700
- Technical Assistance Grants - CFDA 20.710
- State Damage Prevention Grants – CFDA 20.720
- PHMSA Pipeline Safety Program One Call Grant – CFDA 20.721
- PHMSA Pipeline Safety Research and Development – CFDA 20.723
- Underground Natural Gas Storage Grants – CFDA 20.725

**Pipeline Safety Base Grants**
Pipeline safety base grants are authorized by Title 49 of the United States Code (49 U.S.C.) Chapter 601 §60107 – State Pipeline Safety Grants. To qualify for federal grant funds a state agency must participate in the pipeline safety program either under certification in accordance with 49 U.S.C. §60105 or under an agreement in accordance with §60106.The scope of the grant is to support up to 80 percent of the cost of personnel, equipment and activities reasonably required to carry out inspection and enforcement activities of intrastate pipeline facilities under a certification or agreement with the Secretary of Transportation or to act as an agent of the Secretary with respect to interstate pipeline facilities. The activities covered are those specifically for the inspection of natural gas or hazardous liquid pipeline facilities to ensure compliance and enforcement as necessary of applicable chapters of Title 49 of the U. S. Code of Federal Regulations (CFR). The states inspect approximately 90 percent of the pipeline infrastructure under federal safety authority.
The state agency assumes responsibility for the administration of the grant program through the application of sound management practices and for seeing that program funds have been expended and accounted for in accordance with program objectives, the payment agreement, specific guidelines, 2 CFR 225 (Office of Management and Budget Circular A-87) and any other applicable federal rules and regulations.

**The Plaintiff contends that Defendant State of New Jersey as administrator, direct recipient and the Plaintiff's direct employer is integrated and bound to afore-mentioned federal agency, its terms and conditions, rules and requirements by virtue of receiving the programs benefits and has violated the Plaintiff's rights by making promotion decisions based on race and is directly liable to the Plaintiff in accordance with 42 USC 2000 d, e et and the related U.S.C. 42, 1983.**

The Plaintiff additionally herein amends the existing complaint in this matter to include with and/or replace the original defendants, as permitted under federal statute and accepted the Court, the following persons as State government officials and actors operating in individual capacities and directly responsible for

the acts and activities outlined in the Plaintiff's initial Complaint in violation of 42 U.S.C.1983. The Court is herein given notice that the additional Defendants set forth in this amendment may not represent an all-inclusive list of the offending parties as the specific detail pertaining to these persons, their duties and assignment is not generally, publicly available or was unavailable to the Plaintiff at the time of the original complaint and/or current Motion before the Court.

The Plaintiff submits the amended Defendant list are as follows:

**For Injunctive relief in regard to discriminatory and unfair labor practices based on race acting in their respective official capacities as outlined in the original Compliant.**

Board of Public Utility Commissioners (Current)

Joseph  Fiordaliso (President)

Mary-Anna Holden

Dianne Solomon

Upendra Chivykula

Bob Gordon

Unknown co-conspirator State officials and subordinate staff (To be determined)

**For Declaratory relief in regard to discriminatory and unfair labor practices based on race acting in their respective individual capacities as outlined in the original Compliant. `**

Richard Mroz (Former NJBPU President)

Kenneth Sheehan (Former Chief of Staff/current Manager)

Malik Fahmi (Former Director Administration/ Human Resources)

Unknown co-conspirator State officials and subordinate staff (To be determined)

The Plaintiff contends that Defendants listed above acting in their individual and official capacities as specified violated the Plaintiff's Civil Rights by way of multiple and continuous acts of discrimination, retaliation and unfair employment practices based on race. As such, the above-named persons, in addition to other unnamed co-conspirators and duly authorized subordinates yet to be determined without question qualify as "persons" that are subject to suit under U.S.C. 42 Section 1983. Thus, making said individual's ineligible for any protections under the Eleventh Amendment Sovereign Immunity standards.

## CAUSE OF ACTION

Based on a reasonable analysis of the facts summarized herein it can be concluded that the Defendants were aware or should have been aware of the above referenced discrimination based on race and other related violations of law in the same regard. In addition, from the aforementioned it can be reasonably concluded that the Defendants were cognizant of the fact that the Plaintiff was the front runner agency-wide for the position of Chief, Bureau of Financial Audits and other similar management positions and took aggressive actions to hinder and/or prevent such an occurrence. As such, it can be further reasoned that while the NJBPU was the primary actor in the majority of the unlawful behavior the remaining Defendants were complicit with either actual knowledge and participation or implied awareness that the Primary Defendant engaged in various acts, actions or behaviors that were intended to deny the Plaintiff the above-referenced promotional opportunity and other management level advancement based on race in violation of the Civil Rights Act of 1866, 42 U.S.C 1981 (Section 1981), 42 U.SS.C. 1983, 42 U.S.C. 2000 d, 42 U.S.C. 2000 e and the New Jersey Law Against Discrimination N.J.S.A 10 :5-1 et seq

## COUNT I

The Plaintiff's alleges that over the course of his career, he was repeatedly passed over, ignored and/or denied due process and consideration for management level promotional opportunities in various areas of the Board of Public Utilities for which he was either qualified or over qualified based on his race. Resultingly, the Plaintiff has suffered numerous professional and personal injuries, including but not limited to, loss of professional reputation, loss of self-esteem, loss of wages and wage increases and the related pension effects. Resultingly, the Plaintiff also was injured by way of the adverse health effects related to stress, emotional distress and varying levels of depression.

## COUNT II

The Plaintiff alleges that his rights were violated when on October 20, 2016 the Defendant's denied him a promotion, based on race, to the position of Chief, Bureau of Financial Audits in the Division of Audits where he has worked for over 33 uninterrupted years without incident, negative report or poor evaluation and had advanced to a senior line-staff level. Moreover, during that time the Plaintiff was the most senior, experienced available candidate that applied for the position. The Defendant refused to promote the Plaintiff to the position without providing cause or valid reason. Shortly after denying the Plaintiff the position, the Primary Defendant filled the position under an alternate open promotional title Chief, Bureau of Management Audits. (It should be noted that the Plaintiff also applied for that position.) The Plaintiff application to that position was ignored. He was denied an interview, due process or consideration. The recipient of the promotional opportunity was a white male from outside the agency with no known, direct or related qualifying experience or education. Upon hire he was assigned the duties of Bureau Chief Bureau of Financial Audits the position the Primary Defendant recently voided and denied to the Plaintiff.

## COUNT III

The Plaintiff alleges that his rights were violated by the racially bias actions taken by the Defendants that created a hostile and unlawful workplace wherein the

Defendants were aware of the Plaintiff's long-term potential and interest for advancement and that the Plaintiff was the leading candidate for promotion and responded with an extended campaign of counter-measures designed to thwart the Plaintiff's efforts toward promotion, future career growth and advancement based on race. The Plaintiff further alleges that the actions of the Defendants were planned, premeditated, intentional and effected with reckless disregard of the Plaintiff rights or well-being, and in gross violation of Federal and State law regarding discrimination and fair workplace practices.

## COUNT IV

The Plaintiff alleges his rights were violated by the Primary Defendant's race bias in forming of a conclusion of the Plaintiff's qualifications for the promotional opportunity of Chief, Bureau of Financial Audits without performing the required Performance Assessment Review for a period in excess of six years.

## COUNT V

The Plaintiff alleges his rights were violated by the Primary defendant's racial bias in its intentional failure to acknowledge and/or fully process the Plaintiff's work product (Audits, Mergers, etc.) for a period in excess of six years.

## COUNT VI

The Plaintiff alleges his rights were violated by the Primary Defendant's racial bias in its intentional ignoring and/or failing to consider the Plaintiff's academic and professional accomplishments in the promotion review process

## COUNT VII

The Plaintiff alleges his were violated by the Defendant's racial bias in its unlawful and intentional orchestration of delay tactics in the posting, application and interview processes related to the promotional opportunity of Chief, Bureau of

3. The Plaintiff seeks the Defendants retroactively promote the Plaintiff to a position equal or greater to the subject promotional opportunity of Bureau Chief, Division of Audits with a salary and related benefits and adjustments commensurate to the higher of the combined Defendant or NJBPU norms adjusted back to the date of the original posting. including back pay and all other applicable adjustments.

4. Due to ongoing conditions at the Primary Defendants workplace the Plaintiff has resigned from service by way of retirement and no longer seeks reassignment to an agency not affiliated with the Primary Defendant Unknown co-conspirator State officials and subordinate staff (To be determined)hat were to be jointly agreed to by the parties.

5. By way of declaratory relief, the Plaintiff seeks monetary damages from the newly named Defendants Mroz, Sheehan and Fahmi an amount to be determined by the court or by jury deliberation, that shall consider the Plaintiff's direct injuries that include but are not limited to the cumulative loss of salary that would have arose from the denied promotional opportunities including the loss of pension and other related retirement benefits as defined as a by-product of income, time of employment, loss of advanced-standing within the Defendant's workplace, the loss of professional reputation and the loss of earned long-term job security. the monetary damages referenced should also consider the Plaintiff's indirect injuries that include but are not limited to the loss of self- esteem, mental anguish and emotional distress, professional humiliation, personal embarrassment that were incurred by the Plaintiff as a result of the Defendant's actions. The request should also consider an award to offset miscellaneous financial injuries incurred by the Plaintiff to bring forth this matter including, but not limited to complaint related cost, court filings fees, administrative cost, legal fees, court preparation expenses and accrued interest related to all of the above.

6. The Plaintiff seeks where allowed and lawful punitive and compensatory damages as appropriate and to be determined by the court or deliberated by a jury related to the actions of all named Defendants related to this matter.

### JURY DEMAND

To achieve relief, equity, the furtherance of justice and to compel the Defendants compliance with the various Federal and State laws, court ruling, and regulations regarding and related to unlawful employer discrimination based on race, and other unlawful reasons, the Plaintiff DEMANDS A JURY TRIAL in this matter.

Date: July 3, 2019

Signature _____

Print: Michael Davenport

Address: 248 Williams St Rahway, NJ

Telephone: 732 388-4528