UNITED STATES DISTRICT COURT

DISTRICT OF NEW JERSEY

TRENTON VININAGE

| | |
|---|---|
| MICHAEL DAVENPORT ) | |
| ) | Case No. 18-13687 |
| Plaintiff ) | AMENDED COMPLAINT |
| ) | Hon. Lois Goodman |
| v. ) | |
| ) | RECEIVED |
| ) | |
| Joseph Fiordaliso, Mary-Anna Holden, Dianne ) | OCT 15 2021 |
| Solomon, Upendra Chivykula, Bob Gordon, ) | AT 8:30_____M |
| Richard Mroz, Kenneth Sheehan, Malik Fahmi, ) | WILLIAM T. WALSH |
| Elizabeth Muoio and Andrew Sidamon-Eristoff ) | CLERK |
| ) | |
| Defendants, ) | |

## NATURE OF THE CLAIM

This action is in pursuit of declaratory, injunctive and equitable relief, which will include monetary damages as prescribed herein or as deemed appropriate by the Court to recompense the Plaintiff for the improper and illegal discriminatory employment practices directly and indirectly implemented by the defendants. As such, the Plaintiff claims irreparable personal injury and financial losses by way of the Defendant's long-standing, institutional discriminatory practices, based on race, in violation of the civil rights Act of 1866, 42 USC Section 1981.and the New Jersey Law /Against Discrimination (et seq.) The Plaintiff in this complaint is an African American male who has repeatedly been victimized by the Defendant's failure to promote him to various management level positions which he was qualified to hold in deference to white candidates of similar or lesser standing. It should be noted that while a claim of gender-based discrimination is not being submitted as a part the Section 1981 portion of this complaint, the Plaintiff further alleges that defendants Joseph Fiordaliso, Mary-Anne Holden, Dianne Solomon, Upendra Chivykula, Bob Gordon Richard Mroz, Elizabeth Muoio, Andrew Sidamon-Eristoff, Kenneth Sheehan and Makik Fahmi collectively or acting in their own individual capacity have shown a clear, premeditated and purposeful aversion to promoting and/or hiring African Americans of both genders to management level positions. During the Plaintiff's employment with the New Jersey Board of Public Utilities, up to and ending on December 31, 2017, only one known African American male had been promoted to a senior management position through the ranks or by direct hire. During the same period, only one known African American female was promoted to a senior management position It should be noted that for the purposes of this complaint political appointments, transfers and other like patronage type hiring or promoting is not considered. While the Plaintiff has sufficient and undisputable evidence that the discriminatory and disparate treatment that he experienced, and brings to light to by way of this complaint, was present and continuous throughout his entire career with the Primary Defendant, the majority of the evidence and case matter to be presented in this matter pertains to the Defendant's unlawful acts and inactions between the period January 2010 and January 2018. The Defendant's discriminatory policies and practices have irreparably damaged the Plaintiff personally and professionally to the extent that

sanctions, monetary damages and other administrative remedies are required to mitigate and/or offset the various injuries inflicted.

## SUMMARY OF THE CASE

Historically a minute percent of the Defendants' middle management employees has been African American. The number is dramatically less for senior management employment. The Plaintiff submits that these estimates are likely to be consistent in the Departments of all of the defendants in this matter and the State as a whole. The Defendants have either conspired collectively or acted in an individual capacity to refused to hire or promote African Americans to positions of top-level supervisors, middle managers or senior managers, based on race. This situation exists despite the fact that a substantial percentage of the Defendant's workforce is African American, However, only small percent hold management positions at any level. The Plaintiff's direct employer has never had an African American middle manager or senior manager in most areas of the organization including the Division of Audits where the Plaintiff was directly employed. Over the thirty-three years of his employment, the Plaintiff has applied for several management level positions. In each instance, the Agency failed to promote the Plaintiff on the basis of race in deference to white candidates of equal or lesser standing, in line with long-standing agency practice and custom, and in violation of the Civil Rights Act of 1866 42, USC Section 1981 and the New Jersey Law Against Discrimination. Most recently the Plaintiff was denied a promotion to the position of Chief, Bureau of Financial Audits the specific area in the agency where he worked for more than 33 uninterrupted years without negative incident or unfavorable evaluation and covertly hired a while male who lacked both direct experience and familiarity with the day-to-day operations of the Agency and without the benefit of a significant working knowledge of public utility regulation. The Defendants attempted to disguise their illegal activities by voiding the position of Chief, Bureau of Financial Audits, at the eleventh hour and replacing it with the position of Chief, Burau of Management Audits, a position that the Plaintiff also applied for but was denied acknowledgement, interview or serious

consideration. based on race. Moreover, the Defendants' acts in this regard were performed without detailed or sufficient explanation to the Plaintiff.

During the various application periods and interview processes, the Defendants also engaged in numerous illegal, unlawful and unfair employer workplace tactics designed and effected to frustrate the Plaintiff from pursuing certain opportunities. These practices consisted of excessively reposting the same position to 'wear down' targeted candidates and the eleventh hour changing of the position's terms (i.e., compensation range) to discourage the same.

## PARTIES

### PLAINTIFF

The Plaintiff, Michael Davenport, began his direct employment with The State of New Jersey in November 1984 working under the direct authority and supervision of the New Jersey Board of Public Utilities. The Plaintiff had been employed exclusively by the organization in excess of 33 consecutive years without interruption in the Division of Audits where he serves in various capacities as an Auditor/ Analyst. The Plaintiff has either worked directly or been materially involved in every aspect of Division of Audits activity which included special projects and various other high priority assignments in the Bureau of Financial Audits and the Bureau of Management Audits. The Plaintiff's work experience, education and performance record qualify him as having advanced standing in the Division of Audits and within the agency as a whole.

The Plaintiff's achievement and accomplishment includes, but are not limited to:

- The Plaintiff currently hold the position of Administrative 4. This is typically the next progressive step to the position Chief, Bureau of Financial Audits.
- The Plaintiff holds a BA Degree in Accounting from Rutgers University.
- The Plaintiff held a long-term designation as a Certified Fraud Examiner.
- The Plaintiff is a Certified Public Manager (CPM). The Program was created to train and prepare State of New Jersey employees to be future managers. CPM graduates are typically acknowledged publicly by the Defendant's. The Plaintiff's completion was not acknowledged. CPM graduates are typically

offered management positions by the Primary Defendant. The Plaintiff was not promoted or offered a management position.
- The Plaintiff is a graduate of the Sloan Foundation Public Performance Measurement (PPM) Program at Rutgers University. (3.9 Grade Average)
- The Plaintiff was a recipient of the State's one-time cash award (Bonus) for exemplary service. The Plaintiff was the only person in the Audit Division to receive such a distinction.
- The Plaintiff successfully passed the state's Supervisory Battery Exam twice. On the second occasion his score led all Division off Audits candidates
- The Plaintiff was designated as audit division representative on some of the agency's highest priority initiatives.

## DEFENDANTS

The Defendants Joseph Fiordaliso, Mary-Anne Holden, Dianne Solomon, Upendra Chivykula and Bob Gordon are current commissioners of the New Jersey Board of Public Utilities Commission a State agency operating 'in but not of' the Department of Treasury legislatively empowered to oversee various fiscal and management operations of regulated utilities providing natural gas, electricity, water telecommunications and cable television service within the State of New Jersey. It was the direct hiring authority of the Plaintiff. Moreover, it is principle entity responsible for the management and supervision of the Plaintiff pertaining to all matters and all time periods referenced herein. Its offices served as the primary work station of the Plaintiff. Defendant Richard Mroz is a former commissioner and Commision President of the New Jersey Board of Public Utilities who lead the Commission for a majority of the period involving this complaint. Mr. Mroz is no longer with the Commission. Defendant Richard Sheehan is a former Chief of Staff and current Commission senior staff member. Defendant Malik Famhi is a former Director of Personnel/ Administration in place during the majority of period involving this complaint. Mr. Fahmi is no longer employed by the Commission. Defendant Elizabeth Muoio, is the sole commissioner of the New Jersey Department of Treasury (Treasury) which is an executive branch level department within the State of New Jersey. It is one of

New jersey's oldest and powerful state entities. It is charged with the responsibility of formulating and managing the State's budget and the related responsibilities pertaining to the generation and collection of state revenue. It also has the powerful role of coordinating, authorizing and disbursing appropriations to all state departments and agencies. It is the parent state agency overseeing the operations of the Defendant New Jersey Board of Public Utilities. Defendant Andrew Sidamon-Eristoff is a former commissioner of the Department of Treasury who was in place during the majority of the period involving this complaint.

## JURISDICTION AND VENUE

The court has jurisdiction over this action pursuant to the Civil Rights Act of 1866 42, U.S.C. Section 1981. The venue is proper and appropriate given that the majority material events in this matter occurred in this district

## FACTUAL ALLEGATIONS

During his employment, the Plaintiff either refused or avoided several lucrative job opportunities in the private and/or government sectors out of commitment to the Agency and in the pursuit of a career in State public service. The Plaintiff's commitment to the Defendants was clear, obvious and focused from the very beginning. The Plaintiff actions and written communication made it clear to the Defendants that he was ready, willing and able for a management level position and its additional responsibilities. During the Plaintiff's career to date he has regularly gone above and/or beyond the call off duty by volunteering or initiating new work or work-related responsibilities or pushing for additional job-related training or acquiring it at his own expense. After working his way to the top of the arduous civil service professional staff series, the Plaintiff was ready and well prepared for a management level position. Instead he was greeted by the Defendant's race-based 'Management Glass Ceiling'. While it had been glaring apparent to the Plaintiff that management opportunities were not being fairly and/or proportionately offered to African American professional staff, there was a misplaced attitude of commitment, loyalty and unfounded optimism that drove

the Plaintiff's continuing pursuit of this unrealistic objective. While many other of the Plaintiff's similarly situated African American professional colleagues transferred, quit or retired in frustration, the Plaintiff stayed the course.

The Plaintiff first made his management aspirations known to the Primary Defendant on June 4, 2002 when he applied for the position of Section Supervisor Fiscal Resources. Then, on July 1, 2002, he applied for the positions of Chief, Bureau of Financial Audits Division of Audits and Chief, Bureau of Accounts Division of Telecommunications in 2002, In all three instances his letter of interest and resume were ignored. He was not offered an interview or given any serious consideration. The positions were awarded to white candidates of similar standing.

On September 23, 2009, the Plaintiff applied for the position Section Supervisor, Fiscal Resources. On October 2, 2009, the Plaintiff applied for the position of Assistant Director, Division of Energy. The Plaintiff's application for Assistant Director was ignored. No interview or consideration was given to the Plaintiff. The positions were awarded to white males of similar standing.

On September 17, 2013, the Plaintiff applied for the positions of Chief, Bureau of Management Division of Audits and Supervising Administrative Analyst. Both letters of interest and resume were ignored by the Defendants without explanation. The positions were awarded to white males of similar standing.

On September 15, 2014, the Plaintiff applied for the position Director, Division of Audits. The Plaintiff reapplied to the same posting on February 18, 2015. The Plaintiff's letters of interest and resumes in both instances were ignored. No interview or serious consideration was offered or given to the Plaintiff. The position was awarded to a white candidate of similar standing.

On February 18, 2015, the Plaintiff applied to the above-referenced position of Chief, Bureau of Financial Audits Division of Audits. The Plaintiff's letter of interest and resume were ignored, with no interview, consideration or explanation given.

On February 8, 2016, the Plaintiff reapplied for the positions of Chief, Bureau of Financial Audits Division of Audits and Chief, Bureau of Management Audits Division of Audits. The Plaintiff's letter of interest regarding the position of Chief, Bureau of Management Audits was not acknowledged or seriously considered by

the agency and no interview was offered. The plaintiff was reluctantly offered an interview for the position of Chief, Bureau of Financial Audits but denied the Plaintiff the promotion without sufficient reasoning or explanation. In a hand delivered letter dated October 20, 2016 which was also conspicuously sent to the Plaintiff's home email and not allowed to go through the Defendants email system as did all other correspondence in this matter, the Defendant notified the Plaintiff he would not be offered the promotional opportunity but did not provide any other detail to support the failure to promote. The position was the quietly voided at the 11th hour without explanation and reclassified to the above reference position of Chief, Bureau of Management Audits of which the Plaintiff applied for but was denied an interview. The position was awarded to a white male candidate without agency experience or advanced standing.

***The Plaintiff humbly submits that the unique nature of public utility regulation and process and the Plaintiff's thirty-three years of continued service in the source Agency of the promotional opportunity translates into a superior standing. Thus, it can be concluded that the Plaintiff the was the most qualified person available to occupy the position of Chief, Bureau of Financial Audits.***

The Defendants also used various other unlawful administrative tactics to frustrate, harass and/or intimidate the Plaintiff from pursing management level career opportunities. The various tactics deployed included but was not limited to: 1. Stalling the position posting and application process to frustrate the Plaintiff's candidacy.  2. For a period exceeding six years, the Defendants failed to perform the required annual Performance Assessment Reviews (PARS) denying the Plaintiff an opportunity to build an official performance profile. When the evaluations were being properly performed the Plaintiff consistently received above average ratings. ***The Plaintiff humbly submits on technical grounds the that the Defendants' negligent failure to perform the State mandated PARS voids any defense claims involving or related to the Defendant's reasoning for failing to promote based on any performance or work-related rationalizations.*** 3. the Primary Defendant failed to process, review and finalize the majority of the Plaintiff's work product during the period 2010 thru 2017, Several audits were submitted to management, but they were stalled and never processed for approval. In addition, the Plaintiff was not allowed to perform or complete any substantive work for a period of over 6 years. Prior to the Primary Defendant's

curtailment of the Plaintiff's activities, the Plaintiff had been highly active and participated in some of the agency's most high profile and high priority initiatives and projects  By requiring the Plaintiff  to sit idly for such an extended period without cause the Defendants denied the Plaintiff access to the recognition, visibility and credibility from completed work that would normally be received and a significant deciding factor in a fair and lawful promotional process. ***The Plaintiff humbly submits on technical grounds the that Primary Defendant's negligent failure to review or acknowledge or assign the Plaintiff's work product voids any defense claims involving or related to the Defendant's reasoning for failing to promote based on any performance or work-related rationalizations.***
4. Failing to acknowledge the Plaintiff's work-related extracurricular activities and accomplishments. 5. Routinely violating the State of New Jersey rules, procedures and customs regarding official job postings by utilizing a race driven agenda with regard to posting a position positions, interviewing candidates and hiring decision making. 6. Harassing the Plaintiff by denying legitimate travel expenses without cause.  7. Harassing the Plaintiff by placing a litigation hold status on the Plaintiff without reasonable cause for an extended period. 8. Harassing the Plaintiff during the interview process by unjustifiably threatening to implement no salary increase to the promotional Chief, Bureau of Financial Audits promotional opportunity if accepted by the Plaintiff in sharp contrast to salary to long standing agency practice and policy. The meeting was conducted in private with one witness but no paper trail.

The primary Defendants 100 plus year history of failing to fairly promote, hire interview, recruit and simply seriously consider African American for management level positions is as shameful as it is unlawful. Furthermore, if one subtracts the effect of temporary political appointments and patronage hiring, the presence of African Americans is at management level is almost non-existent. Based on the Plaintiff cursory analysis of the aggregate issue, it has been surmised that the same holds true for all the Defendants organizations as a group. In light of the above referenced conduct by the Defendants a clear pattern of discrimination against the Plaintiff has been identified and summarized. From a historical context the Defendants individually and collectively have shown an outright aversion to promotion, hiring and support of African Americans at the management level. Consequently, the Plaintiff humbly reasserts that the

Defendants, upon noticing the Plaintiffs commitment to advancement to management ranks within the agency, deployed various counter-measures based on the Plaintiff's race to thwart the Plaintiffs progress and efforts. The Defendants have openly and brashly displayed targeted, reckless, negligent unfair employer customs, operations and discriminated practices against the Plaintiff based on race. Most prominately, from the period 2009 to 2016, the Plaintiff applied for numerous management level positions all of which he was either adequately or exceptionally qualified to hold. However, in each instance, he was denied the promotion without cause on the basis of race. In most instances the Plaintiff was not interviewed, acknowledged (ignored) and/or simply not seriously considered for the position despite the Plaintiff's direct experience working in the agency and despite having met all the requirements of the job posting by way of direct experience, job performance and education.

## CAUSE OF ACTION

Based on a reasonable analysis of the facts summarized herein it can be concluded that the Defendants, collectively or in an individual capacity, were aware or should have been aware of the above referenced discrimination based on race and other related violations of law in the same regard. In addition, from the aforementioned it can be reasonably concluded that the Defendants were cognizant of the fact that the Plaintiff was the front runner agency-wide for the position of Chief, Bureau of Financial Audits and other similar management positions and took aggressive actions to hinder and/or prevent such an occurrence. As such, it can be further reasoned that while the NJBPU employed Defendants were the primary actors in the majority of the unlawful behavior, the remaining Defendants were complicit with either actual knowledge and participation or implied awareness that the various acts, actions or behaviors that were being practiced were intended to unlawfully deny the Plaintiff the above-referenced promotional opportunity and other management level advancement based on race in violation of the Civil Rights Act of 1866, 42 U.S.C 1981 (Section 1981), and the New Jersey Law Against Discrimination N.J.S.A 10 :5-1 et seq.

## COUNT I

The Plaintiff alleges that over the course of his career, he was repeatedly passed over, ignored and/or denied due process and consideration by the Defendants, collectively or in an individual capacity, for management level promotional opportunities in various areas of the Board of Public Utilities for which he was either qualified or over qualified based on his race. Resultingly, the Plaintiff has suffered numerous professional and personal injuries, including but not limited to, loss of professional reputation, loss of self-esteem, loss of wages and wage increases and the related pension effects. Resultingly, the Plaintiff also was injured by way of the adverse health effects related to stress, emotional distress and varying levels of depression.

## COUNT II

The Plaintiff alleges that his rights were violated when on or about October 20, 2016 the Defendants, collectively or in an individual capacity, denied him a promotion, based on race, to the position of Chief, Bureau of Financial Audits in the Division of Audits where he has worked for over 33 uninterrupted years without incident, negative report or poor evaluation and had advanced to a senior line-staff level. Moreover, during that time the Plaintiff was the most senior, experienced available candidate that applied for the position. The Defendants refused to promote the Plaintiff to the position without providing cause or valid reason. Shortly after denying the Plaintiff the position, the Defendants filled the position under an alternate open promotional title Chief, Bureau of Management Audits. It should be noted that the Plaintiff also applied for that position. The Plaintiff's application to that position was ignored. He was denied an interview, due process or consideration. The recipient of the promotional opportunity was a white male from outside the agency with no known, direct or related qualifying experience or education. Upon hire he was assigned the duties of Bureau Chief Bureau of Financial Audits the position the Defendant's recently voided and denied to the Plaintiff.

## COUNT III

The Plaintiff alleges that his rights were violated by the racially bias actions taken by the Defendants, collectively or in an individual capacity, by engaging in practices that created a hostile and unlawful workplace upon being aware of the Plaintiff's long-term potential and interest for advancement and that the Plaintiff was the leading candidate for various promotional opportunities and responding with an extended campaign of counter-measures designed to thwart the Plaintiff's efforts toward promotion, future career growth and advancement based on race. The Plaintiff further alleges that the actions of the Defendants were planned, premeditated, intentional and effected with reckless disregard of the Plaintiff rights or well-being, and in gross violation of Federal and State law regarding discrimination and fair workplace practices.

## COUNT IV

The Plaintiff alleges his rights were violated by the Defendants, collectively or in an individual capacity, by the practice of race bias in forming of a conclusion of the Plaintiff's qualifications for the promotional opportunity of Chief, Bureau of Financial Audits without performing pr the use of the required Performance Assessment Review for a period in excess of six years.

## COUNT V

The Plaintiff alleges his rights were violated by the Defendants, collectively or in an individual capacity, whom practiced racial bias in its intentional failure to acknowledge and/or fully process the Plaintiff's work product (Audits, Mergers, etc.) for a period in excess of six years.

## COUNT VI

The Plaintiff alleges his rights were violated by the Defendants, collectively or in an individual capacity, by their practice pf racial bias in their intentional ignoring and/or failing to consider the Plaintiff's academic and professional accomplishments in the promotion review process

## COUNT VII

The Plaintiff alleges his rights were violated by the Defendants collectively or in an individual capacity, by their practice of racial bias in the unlawful and intentional orchestration of delay tactics in the posting of job opportunities, acceptance of applications and interview processes and procedures related to the promotional opportunity of Chief, Bureau of Financial Audits. All of which were initiated to discourage and/or frustrate of the Plaintiff who was known by the Defendant's to be an applicant with superior standing.

## COUNT VIII

The Plaintiff alleges his rights were violated by the Defendants, collectively or in an individual capacity, by their practice of unlawful and premeditated racial bias affected by the use of coercion and harassment tactics by way of threatening to reset the salary level at or below the Plaintiff's current salary level if the promotional opportunity was accepted by the Plaintiff. Such conduct is in sharp contrast to agency custom, state policy and lawful workplace standards.

## COUNT IX

The Plaintiff alleges that his rights were violated by the Defendants, collectively or in an individual capacity, by their practice of racial bias in their willful, deliberate and routine manipulation of the State of New Jersey's civil service rules and regulation as a means to deny promotional opportunities to the Plaintiff and other qualified candidates based on race.

## COUNT X

The Plaintiff alleges his rights were violated by the Defendants, collectively or in an individual capacity, by engaging in bias, unlawful harassment and retaliation activities directed against the Plaintiff, based on race, wherein ordinary and necessary employee travel expenses incurred in the normal course of agency business were denied without reasonable cause during a period of high promotional activity. This harassment was amplified by the Defendant's continuing unlawful retaliation efforts that unjustly altered the Plaintiff's employment status by placing him on a "Litigation Hold" for a period of several years because he complained about not receiving his reimbursement.

## COUNT XI

The Plaintiff alleges his rights were violated by the Defendants collectively or in an individual capacity, by their premeditated, racially biased and unlawful acts of punishing the Plaintiff for complaining about the above-referenced failure to reimbursement of out of pocket travel expenses by way of attempting to 'constructively terminate' the Plaintiff by not allowing him to perform any material work-related duties and by keeping him in the office for a period of nearly six years without a meaningful work assignment.

## COUNT XII

The Plaintiff alleges his rights were violated by the Defendants, collectively or in an individual capacity, by their overtly bias and unjustifiable decision, based on race, to ignore, without cause, the current Audit Division Director's recommendation to promote the Plaintiff to the position of Chief, Bureau of Financial Audits.

## PRAYER FOR RELIEF

1. The Plaintiff seeks injunctive relief in that the court shall find that the actions, customs, conduct and practices of the Defendants, collectively or in an individual capacity, as put forth herein, violate the Civil Rights Act of 1866, 42 USC Section 1981 and the New Jersey Law Against Discrimination.

2. The Plaintiff seeks injunctive relief in that the Defendants, collectively and individually, by Order of the court be directed to permanently discontinue those discriminatory acts as highlighted herein that were affected against the Plaintiff and other similarly situated persons within the Defendants combined workplaces. This shall include any other related unlawful discriminatory offenses that are uncovered as a result of this complaint and the related proceedings.

3. The Plaintiff seeks injunctive relief requiring Defendant's employers to retroactively promote the Plaintiff to a position equal or greater to the subject promotional opportunity of Bureau Chief, Division of Audits with a salary and related benefits and adjustments commensurate to an amount either greater than the Plaintiff's last, highest salary or compensation equivalent to combined established norms for similarly situated person adjusted back to the date of the original posting. including back pay and all other applicable adjustments or affect financial compensation commiserate thereto, whichever is higher.

4. The Plaintiff seeks declaratory relief by way compensation for the loss of affiliation with his former workplace and employer due to the action by the Defendants, collectively or in an individual capacity.

5. The Plaintiff seeks declaratory relief by way of monetary damages in an amount to be determined by the court or by jury deliberation, that shall consider the Plaintiff's direct injuries that include but are not limited to the cumulative loss of salary that would have arose from the denied promotional opportunities including the loss of pension and other related retirement benefits as defined as a by-product of income, time of employment, loss of advanced-standing within the Defendant's workplace, the loss of professional reputation and the loss of earned long-term job security.

6. The Plaintiff seeks declaratory relief by way of monetary damages in an amount determine by the court or by jury deliberation, that shall consider the Plaintiff's indirect injuries that include but are not limited to the loss of self- esteem, mental anguish and emotional distress, professional humiliation, personal embarrassment that were incurred by the Plaintiff as a result of the Defendants actions.

7. The Plaintiff seeks declaratory relief by way of monetary damages an amount to be determined by the court or deliberated by a jury, to offset miscellaneous financial injuries incurred by the Plaintiff to bring forth this matter including, but not limited to complaint related cost, court filings fees, administrative cost, legal fees, court preparation expenses and accrued interest related to all of the above.

8. The Plaintiff seeks punitive and compensatory damages as appropriate and to be determined by the court or deliberated by a jury related to the actions of the Defendant's action related to this matter.

## JURY DEMAND

To achieve relief, equity, the furtherance of justice and to compel the Defendants, collectively or an individual capacity to act in compliance with the various Federal and State laws, court ruling, and regulations regarding and related to unlawful employer discrimination based on race, and other unlawful reasons, the Plaintiff herein DEMANDS A JURY TRIAL.

By: _____

Michael Davenport

Pro Se

Dated: October 12, 2021

# UNITED STATES DISTRIC COURT
# DISTRICT OF NEW JERSEY – TRENTON DIVISION

## CERTIFICATION OF SERVICE

I, MICHAEL DAVENPORT

I am the Plaintiff in this case and am representing myself. On October 14, 2021, I sent a copy of the Amended Complaint dated October 14, 2021 to the parties listed below.
I certify under penalty of perjury that the above documents were sent using the mode of service indicated.

Date: October 14, 2021

Signature

RECEIVED
OCT 15 2021
AT 8:30_____M
WILLIAM T. WALSH
CLERK

**Name and Address of Party Served:**
**Kimberly G, Williams Deputy Attorney General**
**P.O. Box 080 Trenton, NJ 08625**

**Relationship of Party to the Case:**
**Representing Counsel**

**Mode of Service**

X  Certified mail/RR

**U.S. Postal Service**
**CERTIFIED MAIL™ RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com.

Trenton, NJ 08625

| | | |
|---|---|---|
| Postage | $3.75 | 0460 |
| Certified Fee | $3.05 | 10 |
| Return Receipt Fee (Endorsement Required) | $0.00 | Postmark Here |
| Restricted Delivery Fee (Endorsement Required) | $0.00 | |
| Total Postage & Fees | $1.76 $8.56 | 10/14/2021 |

Sent To: Kimberly Williams Ofc. of Atty Gn
Street, Apt. No.; or PO Box No.: P.O. Box 080
City, State, ZIP+4: Trenton, NJ. 08625-0080

PS Form 3800, August 2006    See Reverse for Instructions

7009 2820 0000 0483 6900

---

**UNITED STATES POSTAL SERVICE**

RAHWAY
123 E MILTON AVE
RAHWAY, NJ 07065-9998
(800)275-8777

10/14/2021                    03:59 PM

| Product | Qty | Unit Price | Price |
|---|---|---|---|
| First-Class Mail® Large Envelope | 1 | | $1.76 |

Trenton, NJ 08625
Weight: 0 lb 3.20 oz
Estimated Delivery Date
  Sat 10/16/2021
Shipment may be delayed due to emergency or other conditions.

Certified Mail®                $3.75
  Tracking #:
    70092820000204836900
Return Receipt                 $3.05
  Tracking #:
    9590 9402 4017 9079 3524 77
Total                          $8.56

Grand Total:                   $8.56

Credit Card Remitted           $8.56
  Card Name: VISA
  Account #: XXXXXXXXXXXX1569
  Approval #: 031732
  Transaction #: 256
  AID: A0000000980840    Chip
  AL: US DEBIT
  PIN: Not Required

*********************************************
USPS is experiencing unprecedented volume
  increases and limited employee
  availability due to the impacts of
  COVID-19. We appreciate your patience.
*********************************************

In a hurry?