UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

**NOT FOR PUBLICATION**

| | |
|---|---|
| MICHAEL DAVENPORT,<br><br>Plaintiff,<br><br>v.<br><br>NEW JERSEY BOARD OF PUBLIC UTILITIES, *et al.*,<br><br>Defendants. | Civ. No. 18-13687 (GC)<br><br>**MEMORANDUM OPINION** |

CASTNER, District Judge

**THIS MATTER** comes before the Court upon the Motion to Dismiss Plaintiff Michael Davenport's Second Amended Complaint, filed by Defendants Joseph Fiordaliso, Mary-Anna Holden, Dianne Solomon, Upendra Chivykula, Bob Gordon, Richard Mroz, Kenneth Sheehan, and Malik Fahmi (the "Moving Defendants") on November 3, 2021. (ECF No. 60.) On July 6, 2022, Plaintiff Michael Davenport ("Plaintiff"), proceeding *pro se*, opposed. (ECF No. 65.) On July 7, 2022, the Moving Defendants replied. (ECF No. 66.) The Court has decided the Motion based on the written submissions and without oral argument, pursuant to Local Rule 78.1(b). For the reasons stated herein, the Motion is **GRANTED**.

## I.     BACKGROUND

### A.     Factual Background

As the complaint before the Court is Plaintiff's Second Amended Complaint ("SAC") and the Court has previously decided two Motions to Dismiss in this matter, the parties are familiar with the facts of this case. The Court reiterates the facts here and accepts them as true for the

1

purpose of deciding this Motion.

Plaintiff, appearing *pro se*, brings this civil rights action against several individuals associated with his former employer, the New Jersey Board of Public Utilities ("NJBPU"). Plaintiff alleges workplace discrimination in violation of 42 U.S.C. § 1981 and the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. § 10:5-12.  (2d Am. Compl. 2, 10, ECF No. 59.)[1]  This action centers on NJBPU's failure to promote Plaintiff or give him an opportunity for promotion, despite Plaintiff's credentials and numerous applications.  (*Id.* at 6–10.)

Plaintiff is an individual who worked for NJBPU "in excess of 33 consecutive years," beginning in November 1984.  (*Id.* at 4.)  Plaintiff has since retired from NJBPU.  (1st Am. Compl. 19, ECF No. 30.)  While working at NJBPU, he served in various capacities as an auditor and/or analyst in its Division of Audits.  (2d Am. Compl. 4.)  As of September 7, 2018, the date Plaintiff initiated this action, he held the position of "Administrative 4," which is the position below Chief of the Bureau of Financial Audits, contained within the Division of Audits.  (Compl. 9, ECF No. 1.)  Plaintiff holds a bachelor's degree in accounting and has various certifications, such as Certified Fraud Examiner and Certified Public Manager.  (2d Am. Compl. 4.)  He graduated from the "Sloan Foundation Public Performance Measurement (PPM) Program at Rutgers University." (*Id.* 5.)  He has earned several distinctions: he received a cash award for exemplary service, earned the highest score on the "Supervisory Battery Exam" in relation to all other examinees from the Division of Audits, and worked "on some of the agency's highest priority initiatives."  (*Id.* at 4–5.)

The SAC identifies the following Defendants: (1) five commissioners of NJBPU, President

---

[1] The pleadings do not include page numbers, so the pages to which the Court cites with respect to all of Plaintiff's pleadings are the CM/ECF page numbers.

Joseph Fiordaliso, Mary-Anna Holden, Dianne Solomon, Upendra Chivykula, and Bob Gordon (the "NJBPU Commissioner Defendants"); (2) three individuals that were affiliated with NJBPU for a majority of the period involving Plaintiff's claims, Richard Mroz, former President and former Commissioner of NJBPU, Kenneth Sheehan, former Chief of Staff of NJBPU and current senior staff member, and Malik Fahmi, former Director of Human Resources of NJBPU (the "Individual Defendants"); and (3) two current or former New Jersey Department of Treasury (the "Treasury Department") commissioners, Elizabeth Muoio and Andrew Sidamon-Eristoff, respectively (the "Treasury Department Defendants"). (*Id.* at 2, 5–6.)[2] According to Plaintiff, the Treasury Department oversees NJBPU. (*Id.* at 6.) Plaintiff alleges that these entities were the "direct hiring authority" of Plaintiff. (*Id.* at 5.)

Plaintiff, a black male, alleges that he first made his management aspirations known to NJBPU around June 4, 2002 when he applied for the position of Section Supervisor, Fiscal Resources. (*Id.* at 2, 7.) Thereafter, he applied for various promotions on nine different occasions between 2002 and 2016. (*See id.* at 7–8 (detailing applications on or around June 4, 2002; July 1, 2002; September 23, 2009; October 2, 2009; September 17, 2013; September 15, 2014; February 18, 2015; February 18, 2015; and February 8, 2016).) Each time he applied for a promotion, Plaintiff contends that NJBPU either did not offer him an interview or did not seriously consider him for the position; rather, NJBPU offered the position to a "white candidate[]" or "white male[]" of "similar" or "lesser" "standing." (*Id.* at 3, 7–8.)

---

[2] The SAC refers to NJBPU Commissioner Defendant as "Mary-Anna Holden" in the caption and as "Mary-Anne Holden" in the SAC. (2d Am. Compl. 2, 5.) The Court identifies this defendant as "Mary-Anna Holden," which is the name reflected in the caption. Additionally, Plaintiff refers to Defendant "Richard Sheehan" and Defendant "Kenneth Sheehan" in the SAC. (2d Am. Compl. 2, 5.) The Court identifies this defendant as "Kenneth Sheehan," which is the name reflected in the caption.

Most recently, on February 8, 2016, Plaintiff "reapplied" for positions of Chief, Bureau of Financial Audits and Chief, Bureau of Management Audits. (*Id.* at 7.) He alleges that his "letter of interest regarding the position of Chief, Bureau of Management Audits was not acknowledged or seriously considered by [NJBPU] and no interview was offered." (*Id.* at 7–8.) Plaintiff asserts that he was "reluctantly offered an interview for the position of Chief, Bureau of Financial Audits, but denied the promotion without sufficient reasoning or explanation." (*Id.* at 8.) He alleges that "a hand delivered letter dated October 20, 2016" informed him that he did not get the promotion. (*Id.*) The letter was "conspicuously sent to [] Plaintiff's home email and not allowed to go through the Defendants['] email system." (*Id.*) Plaintiff further asserts that "[t]he position was the[n] quietly voided at the 11th hour without explanation and reclassified [as]. . . Chief, Bureau of Management Audits" and "was awarded to a white male candidate without agency experience or advanced standing." (*Id.*)

Plaintiff further alleges that Defendants used "various other unlawful administrative tactics to frustrate, harass, and/or intimidate . . . Plaintiff from purs[u]ing management level career opportunities." (*Id.* at 8.) Specifically, Plaintiff asserts that Defendants (1) stalled the job posting and application process to frustrate Plaintiff's candidacy; (2) failed to perform the required annual Performance Assessment Reviews of Plaintiff, which prevented Plaintiff "an opportunity to build an official performance profile;" (3) failed to process, review, and finalize some of Plaintiff's work product between 2010 and 2017, which denied Plaintiff "access to the recognition, visibility and credibility from completed work that would normally be a deciding factor in [the promotion process];" (4) failed to acknowledge Plaintiff's work-related extracurricular activities and accomplishments; (5) "routinely" violated New Jersey rules, procedures, and customs regarding job postings; (6) denied legitimate travel expenses without justification; (7) placed a "litigation

4

hold status" on Plaintiff without justification; and (8) in a meeting "conducted in private with one witness but no paper trail," threatened to not increase the salary of the position of Chief, Bureau of Financial Audits if Plaintiff accepted the job, which was in contravention of longstanding agency practice and policy. (*Id.* at 8–9.)

Plaintiff also submits that, generally, "a minute percent" of NJBPU's "middle management employees has been African American," and "the number is dramatically less for senior management employment." (*Id.* at 3.) He asserts that Defendants "have either conspired collectively or acted in an individual capacity to refuse[] to hire or promote African Americans to positions of top-level supervisors, middle managers or senior managers, based on race." (*Id.*)

According to Plaintiff, the "above referenced conduct by Defendants" demonstrates a "clear pattern of discrimination against [] Plaintiff," and Defendants "denied the promotion[s] without cause and on the basis of race. (*Id.* at 9.) In doing so, Plaintiff alleges, Defendants unlawfully denied Plaintiff's promotions and management level advancement opportunities in violation of 42 U.S.C. § 1981 and NJLAD, N.J.S.A. § 10:5-1 *et seq.* (*Id.* at 10.)

**B.     Procedural Background**

On September 7, 2018, Plaintiff filed a Complaint (the "Original Complaint") against state entities NJBPU, the Treasury Department, and the State of New Jersey (collectively, the "State Defendants"). (Compl. 1–2.) The Original Complaint included claims under 42 U.S.C. §§ 1981 and 1983; Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*; and NJLAD, N.J.S.A. § 10:5-1 *et seq.* (*Id.* at 3–4.)[3] On January 4, 2019, the Court dismissed the matter for failure to prosecute. (ECF No. 4.) On January 11, 2019, Plaintiff moved to reopen the case (ECF

---

[3] Plaintiff did not explicitly raise the Title VII or § 1983 claims in the Original Complaint, but the Court construed the Complaint as including both of these claims. (1st Mot. to Dismiss Op. 5–8, ECF No. 17.)

No. 5), which the Court granted on January 17, 2019 (ECF Nos. 7, 8).

On April 10, 2019, the State Defendants moved to dismiss the Original Complaint, and on June 11, 2019, the Court granted the State Defendants' Motion to Dismiss. (ECF Nos. 11, 17–18). The Court explained that it lacked jurisdiction over Plaintiff's claims brought pursuant to 42 U.S.C. § 1981 because "a plaintiff may bring a § 1981 claim only against a private actor, but not a government actor." (1st Mot. to Dismiss ("MTD") Op. 6, ECF No. 17 (citing *McGovern v. City of Phila.*, 554 F.3d 114, 120–21 (3d Cir. 2009) (quoting *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 733 (1989)).) The Court also dismissed the NJLAD and § 1983 claims because the State Defendants were either a state or state agency and thus entitled to sovereign immunity in federal court. (*Id.* at 7–9.) With respect to the § 1983 claim, the Court noted that § 1983 has not been construed as an abrogation of the States' Eleventh Amendment immunity, so the suit was barred. (*Id.* at 8 (quoting *Toth v. Cal. Univ. of Pa.*, 844 F. Supp. 2d 611, 648 (W.D. Pa. 2012)).) With respect to the NJLAD claim, the Court noted that courts within this district have held that "the State of New Jersey, and its administrative arms, may not be sued in federal court under the NJLAD." (*Id.* at 9, 9 n.4 (collecting cases).) Finally, the Court dismissed Plaintiff's Title VII claim because Plaintiff failed to exhaust his administrative remedies before bringing the action. (*Id.* at 10–11.) The Court granted Plaintiff leave to amend to cure these deficiencies. (*Id.* at 12.)

On July 29, 2019, Plaintiff filed the First Amended Complaint ("FAC") alleging violations of 42 U.S.C. § 1981; 42 U.S.C. § 1983; Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*; and the NJLAD, N.J.S.A. § 10:5-1 *et seq.* (1st Am. Compl. 16.) Plaintiff brought these claims against the State Defendants again, but also named the NJBPU Commissioner Defendants and the Individual Defendants, Richard Mroz, Kenneth Sheehan, and Malik Fahmi. (*Id.* 5–6.) The FAC did not list each individual NJBPU Commissioner Defendant by name, but rather listed the

"NJBPU Commissioners" as a single defendant, and noted that Plaintiff was suing each commissioner in an individual capacity. (*Id.* at 6.)

On August 29, 2019, the State Defendants filed a second Motion to Dismiss seeking to dismiss Plaintiff's §§ 1981 and 1983 claims pursuant to Rules 12(b)(1) and 12(b)(6). (2d MTD 2, ECF No. 25-1.) Plaintiff did not oppose.[4]

On October 30, 2019, the Court granted the State Defendants' Motion to Dismiss. (2d MTD Op. 9, ECF No. 27.) The Court again dismissed Plaintiff's § 1983 claim against the State Defendants on sovereign immunity grounds, (*id.* at 6–7), and Plaintiff's § 1981 claim against the State Defendants because a § 1981 claim may only be brought against a private actor, (*id.* at 8). The Court dismissed Plaintiff's NJLAD claims against the State Defendants *sua sponte*, because "NJLAD claims may only be brought against state entities in New Jersey Superior Court, unless there is an express waiver of immunity," which had not occurred. (*Id.*) The Title VII claim against the State Defendants remained because the State Defendants did not seek to dismiss it in their Motion to Dismiss. (*Id.*)

The Court also noted that the docket did not reflect that Plaintiff had served the NJBPU Commissioner Defendants or the Individual Defendants, and that these individuals "may be subject to suit under § 1983." (*Id.* at 7.) Accordingly, Plaintiff's claims against these individuals remained viable, but the Court directed Plaintiff to advise the Court whether he had properly served these defendants. (2d MTD Order 1, ECF No. 28.)

On March 15, 2021, the parties stipulated to the dismissal of the Treasury Department, the State of New Jersey, and the "NJBPU Commissioners" listed as a single defendant. (Stip. of

---

[4] The Court extended the time in which Plaintiff could oppose the second Motion to Dismiss, (*see* Letter Order, ECF No. 26), but Plaintiff did not respond.

Dismissal, ECF No. 54.)  The Title VII claim against NJBPU remained.  (*Id.*)  The Court ordered

Plaintiff to amend the Complaint to list the NJBPU Commissioner Defendants as individuals, *i.e.*,

Joseph Fiordaliso, Mary-Anna Holden, Dianne Solomon, Upendra Chivykula, Bob Gordon; and

the Treasury Department Defendants as individuals, *i.e.*, Elizabeth Muoio, and Andrew Sidamon-

Eristoff.  (Order to Am. Compl. 1–2, ECF No. 53.)

Accordingly, on October 15, 2021, Plaintiff filed the SAC, which is the operative complaint

in the Motion to Dismiss presently before the Court.  (ECF No. 59.)  The SAC added the above-

mentioned defendants as individuals, and did not include the § 1983 and Title VII claims.  (*See* 2d

Am. Compl. 2, 3, 6, 10, 15.)  Therefore, the SAC alleges only § 1981 and NJLAD counts against

the NJBPU Commissioner Defendants, the Individual Defendants, and the Treasury Department

Defendants, and lists each of these defendants by name.  (*Id.* at 2, 5–6.)  Plaintiff brings these

counts against Defendants as individuals, asserting that "Defendants have either conspired

collectively or acted in an individual capacity to refuse[] to hire or promote African Americans to

positions of top-level supervisors, middle managers or senior managers, based on race."  (*Id.* at 3.)

The relief Plaintiff seeks is: (1) "the court [] find that the actions, customs, conduct and

practices of the Defendants, collectively or in an individual capacity, . . . violate [§ 1981 and

NJLAD]," (*id.* at 15 ¶ 1); (2) injunctive relief directing the Defendants to "permanently discontinue

those discriminatory acts as highlighted herein" and requiring "Defendant[s'] employers to

retroactively promote [] Plaintiff," (*id.* at 15 ¶¶ 2–3); and (3) monetary damages to compensate

Plaintiff for "the loss of affiliation with his former workplace;" the loss of salary and other benefits

from his promotion; the emotional distress and professional humiliation; legal fees; and other

"punitive and compensatory damages as appropriate and to be determined by the Court," (*id.* at

15–16 ¶¶ 4–8).

On November 3, 2021, the NJBPU Commissioner Defendants and the Individual Defendants filed a Motion to Dismiss the SAC.  (ECF No. 60.)  The Treasury Department Defendants did not join in the Motion and have not otherwise appeared in this action, and the docket does not reflect that Plaintiff has served the SAC on the Treasury Department Defendants. On July 6, 2022, Plaintiff filed an opposition.  (ECF No. 65.)  On July 7, 2022, the NJBPU Commissioner Defendants and the Individual Defendants filed a reply.  (ECF No. 66.)  The Court considers this Motion to Dismiss only as to the Moving Defendants, which are the NJBPU Commissioner Defendants and the Individual Defendants.

## II.    LEGAL STANDARDS

### A.    Lack of Subject Matter Jurisdiction

Under Federal Rule of Civil Procedure ("Rule") 12(b)(1), a defendant may move at any time to dismiss the Complaint for lack of subject matter jurisdiction on either facial or factual grounds.  *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000) (citing *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)).  In analyzing a facial challenge, a court "must consider only the allegations of the complaint and documents attached thereto, in the light most favorable to the plaintiff."  *Id.* (citing *Mortensen*, 549 F.2d at 891).  In considering a factual challenge, a court "may consider evidence outside of the pleadings."  *Id.* (citing *Mortensen*, 549 F.2d at 891).  Regardless of the type of challenge, the plaintiff bears the "burden of proving that the court has subject matter jurisdiction."  *Cottrell v. Heritages Dairy Stores, Inc.*, 2010 WL 3908567, at *2 (D.N.J. Sept. 30, 2010) (citing *Mortensen*, 549 F.2d at 891).

### B.    Failure to State a Claim

To survive dismissal under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Schreane v. Seana*,

506 F. App'x 120, 122–23 (3d Cir. 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

When considering a Rule 12(b)(6) motion, a district court must conduct a three-part analysis. *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Iqbal*, 556 U.S. at 675) (alterations in original). Second, the court must accept as true all well-pleaded factual allegations and construe the complaint in the light most favorable to the plaintiff. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009); *see also Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786–87 (3d Cir. 2016). However, the court may disregard any conclusory legal allegations. *Fowler*, 578 F.3d at 210; *Connelly*, 809 F.3d at 787. Finally, the court must determine whether the "facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A complaint that does not demonstrate more than a "mere possibility of misconduct" must be dismissed. *See Gelman v. State Farm Mut. Auto. Ins. Co.*, 583 F.3d 187, 190 (3d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679).

## III.   **DISCUSSION**

The Moving Defendants move to dismiss on the following grounds: the Eleventh Amendment bars suit in federal court against them in their official capacities; Plaintiff fails to allege facts of the Moving Defendants' individual involvement to assert claims under § 1981 and NJLAD; and this Court lacks jurisdiction to hear Plaintiff's NJLAD claims. (3d MTD 6–9, ECF No. 60-1; Defs.' Reply 2, ECF No. 66.) The Court considers these arguments with respect to the claims alleged in the SAC—the § 1981 and NJLAD claims—construing the SAC as bringing claims against the Moving Defendants in both their official capacities as state actors and as individuals.

### A.   Claims Against State Actors — The Eleventh Amendment

The Eleventh Amendment bars suits against states unless the state consents to the suit, or Congress abrogates the state's sovereign immunity.   U.S. CONST. amend. XI; *Koslow v. Commonwealth of Pa.*, 302 F.3d 161, 167–68 (3d Cir. 2002).   "[I]n addition, a person seeking purely prospective relief against state officials for ongoing violations of federal law may sue under the 'legal fiction' of *Ex parte Young*, 209 U.S. 123, 159–60 (1908), despite the text of the Eleventh Amendment."   *Koslow*, 302 F.3d at 168 (internal citation shortened).

The Court does not need to reach the issue of whether the *Ex parte Young* exception applies because, under the Third Circuit's holding in *McGovern v. City of Philadelphia*, "no implied private right of action exists against state actors under 42 U.S.C. § 1981."[5]   *Roper v. Van Mater*, 2011 WL 5557527, at *2 (D.N.J. Nov. 15, 2011) (quoting *McGovern*, 554 F.3d at 122 ) (internal quotation marks omitted); *see also McGovern*, 554 F.3d at 118 (noting that "the fact that § 1981(c) establishes a private right of action against private defendants does not lead to the conclusion that

---

[5] Even considering *Ex parte Young*, Plaintiff's claims still do not meet the requirements of the *Ex parte Young* exception to sovereign immunity.   Under *Ex parte Young*, a suit against a state official may move forward if the plaintiff seeks "purely prospective relief" for "ongoing violations of federal law." *Koslow*, 302 F.3d at 168.   However, the SAC does not allege any "ongoing violations of federal law." *See id.* Rather, the allegations in the SAC center on actions that took place during the course of Plaintiff's employment, (2d Am. Compl. 6–10), and Plaintiff states that he has retired from his position, (1st Am. Compl. 19).   Plaintiff pleads that the "majority of the evidence and case matter to be presented in this matter pertains to the Defendant[s'] unlawful acts and inactions between the period January 2010 and January 2018." (2d Am. Compl. 2.)   Thus, Plaintiff does not plead "ongoing violations of federal law" and these claims do not fit within the *Ex parte Young* exception to the Eleventh Amendment. *See Roper*, 2011 WL 5557527, at *3 (finding that a plaintiff's claim against a state official seeking reinstatement for "allegations relat[ing] to actions taken during the course of her employment" did not fit within the *Ex parte Young* exception to the Eleventh Amendment because she had "retired from the [state employer] over one year ago") (quoting *Pennsylvania Fed'n of Sportsmen's Clubs, Inc. v. Hess*, 297 F.3d 310, 324 (3d Cir. 2002)).

a parallel right must exist for suits against state defendants if such actions are provided for elsewhere in the statutory scheme"). Instead, § 1983 is the "exclusive federal remedy for violation of rights guaranteed in § 1981 by state governmental units." *McGovern*, 554 F.3d at 121 (quoting *Jett*, 491 U.S. at 733)). Here, Plaintiff brings the SAC directly under § 1981, not under § 1983. (*See* 2d Am. Compl. 2, 3, 6, 10, 15.) Therefore, to the extent the SAC lists the Moving Defendants as NJBPU state actors, the Court dismisses the § 1981 claims against them. *See Roper*, 2011 WL 5557527, at *2 (citing *McGovern* and *Jett*, dismissing § 1981 claim against state employee's supervisor because § 1981 on its own does not create a private right of action against state actors).[6]

The SAC also alleges that Defendants "have either conspired collectively or acted in an individual capacity." (2d Am. Compl. 3.) Thus, the Court considers Plaintiff's claims against the Moving Defendants in their individual capacities.

**B.      Claims Against Individual Defendants — Section 1981**

Section 1981 ensures "[a]ll persons . . . the same right in every State and Territory to make

---

[6]Additionally, the Court notes that Plaintiff asserts "that over the course of his career, he was repeatedly passed over, ignored and/or denied due process and consideration by the Defendants." (2d Am. Compl. 11.)  To the extent Plaintiff asserts a constitutional claim for deprivation of a property right without due process, the State and state actors are barred from such a claim by the Eleventh Amendment. *See Tung v. Rabner*, 2020 WL 6638582, at *1 (D.N.J. Nov. 10, 2020), *aff'd sub nom. Tung v. Superior Ct. of New Jersey*, 854 F. App'x 443 (3d Cir. 2021), *cert. denied*, 142 S. Ct. 488 (2021) (finding that a plaintiff's "procedural due process claims are barred by the Eleventh Amendment and do not properly fall within the *Ex Parte Young* exception to Defendants' immunity to suit"). As in *Tung*, this Court has determined that Plaintiff's claims against the state actors do not fall under the *Ex Parte Young* exception to the Eleventh Amendment. *See* discussion *supra* n.5; *see also Johnson v. Guhl*, 91 F. Supp. 2d 754, 771 (D.N.J. 2000) (dismissing procedural due process claims against state officials, except those for prospective injunctive relief, which fell under the *Ex Parte Young* exception); *Eaford v. Lagana*, 2011 WL 2193373, at *1 (D.N.J. June 6, 2011) (dismissing procedural due process claims against state employees acting in their official capacities because they were protected from suit under the Eleventh Amendment). Additionally, the Court does not consider this claim against individuals "because the [Fourteenth] Amendment is directed at the States, [and thus] it can be violated only by conduct that may be fairly characterized as 'state action.'" *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982) (citing U.S. Const. amend. XIV).

and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens . . ." 42 U.S.C. § 1981(a).  Generally, this statute protects against intentional discrimination on the basis of race.  *See Gen. Bldg. Contractors Ass'n, Inc. v. Pennsylvania*, 458 U.S. 375, 391 (1982).

"In order to state a claim under § 1981, a plaintiff 'must allege facts in support of the following elements: (1) [that the plaintiff] is a member of a racial minority; (2) intent to discriminate on the basis of race by the defendant; and (3) discrimination concerning one or more of the activities enumerated in the statute[,] which includes the right to make and enforce contracts . . .'" *Brown v. Philip Morris Inc.*, 250 F.3d 789, 797 (3d Cir. 2001) (quoting *Yelverton v. Lehman*, 1996 WL 296551, at *7 (E.D. Pa. June 3, 1996), *aff'd. mem.*, 175 F.3d 1012 (3d Cir. 1999)).

A plaintiff may establish a right to relief against an employer under § 1981 by demonstrating disparate treatment of members of racial minorities, a hostile work environment, or retaliation.  *See Emery v. Uber Techs., Inc.*, 2021 WL 941879, at *4–8 (D.N.J. Mar. 12, 2021), *aff'd sub nom. Uber Driver Partner Emery v. Uber Techs. Inc.*, 2022 WL 1196700 (3d Cir. Apr. 22, 2022) (analyzing § 1981 claim arising from an "employment relationship" under disparate treatment, hostile work environment, and retaliation theories); *Suero v. Motorworld Auto. Grp., Inc.*, 2017 WL 413005, at *7 (M.D. Pa. Jan. 31, 2017) (noting that § 1981 applies to at-will employment relationships).  Based on the facts alleged in the SAC, the Court considers whether Plaintiff has alleged facts to support disparate treatment or hostile work environment theories.[7]

---

[7] Plaintiff does not allege that he engaged in a "protected activity" to support a claim of retaliation. Plaintiff alleges that Defendants harassed Plaintiff "by denying legitimate travel expenses without cause," (2d Am. Compl. 9), and "punish[ed] [] Plaintiff for complaining about the above-referenced failure to reimbursement [sic] of out of pocket travel expenses by way of attempting to 'constructively terminate' [] Plaintiff by not allowing him to perform any material work-related

Both disparate treatment and hostile work environment theories require, among other elements, a showing that the defendant engaged in "intentional discrimination."[8]   To allege "intentional discrimination," a plaintiff may use, "*inter alia*, 'comparator evidence, evidence of similar racial discrimination [against] other employees, or direct evidence of discrimination from statements or actions by [the defendant] suggesting racial animus.'" *Emery*, 2021 WL 941879, at *4 (quoting *Golod v. Bank of Am. Corp.*, 403 Fed. App'x. 699, 702 n.2 (3d Cir. 2010)) (alterations in original). "Direct evidence" may include "any statements or actions from [the defendant] which

---

duties and by keeping him in the office for a period of nearly six years without a meaningful work assignment," (*id.* at 14).   However, complaining about Defendants' failure to reimburse does not constitute "protected activity" under § 1981.   "Protected activity" consists of "formal charges of discrimination as well as informal protests of discriminatory employment practices, including making complaints to management, objecting to discrimination in an industry or society generally, and expressing opposition to unlawful discrimination." *See Emery*, 2021 WL 941879, at *8 (internal citations and quotation marks omitted) (noting that an Uber driver's "retaliation claim fails on its face because he does not allege that he ever complained to Uber about racial discrimination or race-based harassment"); *see also Coleman v. Delaneys' Cape May, LLC*, 2019 WL 6873758, at *8 (D.N.J. Dec. 17, 2019) (dismissing retaliation claim because employee "never complained . . . about racially offensive conduct").   Thus, Plaintiff's complaint about the failure to reimburse for travel-related expenses is not a protected activity because this complaint does not pertain to race-based discrimination. *Cf. Davis v. City of Newark*, 417 F. App'x 201, 202 (3d Cir. 2011) ("Not every complaint or report entitles its author to protection from retaliation under Title VII."); *Khair v. Campbell Soup Co.*, 893 F. Supp. 316, 335 (D.N.J. 1995) (noting that § 1981 extends "to the reaches of Title VII" and thus, the Court may look to the reasoning in *Davis*, 417 F. App'x at 202).

[8] To establish a right to relief under the disparate treatment theory, a plaintiff must show "(1) that he belongs to a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) discrimination concerning one or more of the activities enumerated in § 1981, including the right to make and enforce contracts." *Doe v. Sizewise Rentals, LLC*, 2010 WL 4861138, at *4 (D.N.J. Nov. 22, 2010), *aff'd*, 530 F. App'x 171 (3d Cir. 2013) (quoting *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 569 (3d Cir. 2002)) (internal quotation marks omitted); *see also Emery*, 2021 WL 941879, at *4.   To state a claim for hostile work environment, a plaintiff must plausibly allege that: "(1) [he] suffered intentional discrimination because of race, (2) the discrimination was severe or pervasive, (3) the discrimination detrimentally affected [him], (4) the discrimination would detrimentally affect a reasonable person in like circumstances, and (5) there is a basis for employer liability, such as *respondeat superior*." *Emery*, 2021 WL 941879, at *6 (quoting *Shaw v. Temple Univ.*, 357 F. Supp. 3d 461, 477 (E.D. Pa. 2019)) (internal quotation marks omitted) (alterations in original).

could conceivably suffice as 'overt or explicit' racial animus, or as 'reflect[ing] discriminatory bias.'" *Id.* (quoting *Ke v. Drexel Univ.*, 2015 WL 5316492, at *12 (E.D. Pa. Sept. 4, 2015), *aff'd sub nom. Lei Ke v. Drexel Univ.*, 645 F. App'x 161 (3d Cir. 2016) and *Fakete v. Aetna, Inc.*, 308 F.3d 335, 339 (3d Cir. 2002)); *see also, e.g.*, *Venson v. Pro Custom Solar, LLC*, 2021 WL 4963294, at *4 (D.N.J. Oct. 25, 2021) (finding intent when the plaintiff alleged that one defendant used racial slurs and included direct quotations of racial slurs said by another defendant); *Brown v. Joel Tanis & Sons, Inc.*, 2014 WL 2705262, at *2–3 (D.N.J. June 13, 2014) (finding that a complaint that included quotations of racial slurs stated a hostile work environment claim under § 1981).

Absent direct evidence, a plaintiff may allege facts to support an inference of discriminatory intent by demonstrating the defendant's disparate treatment of "'comparator employees [that are] similarly situated in all relevant respects,' taking into account 'factors such as the employees' job responsibilities, the supervisors and decision-makers, and the nature of the misconduct engaged in.'" *Emery*, 2021 WL 941879, at *5 (quoting *Wilcher v. Postmaster Gen.*, 441 Fed. App'x. 879, 882 (3d Cir. 2011), *cert. denied*, 132 S. Ct. 1645 (2012)); *Varughese v. Robert Wood Johnson Med. Sch.*, 2017 WL 4270523, at *6 (D.N.J. Sept. 26, 2017). Additionally, courts have recognized an employer's failure to promote or give opportunities for promotion to an employee as evidence of intentional discrimination, where the plaintiff alleged facts to show that the failure to promote was based on race, *e.g.*, that particular similarly situated white colleagues received promotions or opportunities for promotions that the plaintiff did not receive. *See, e.g.*, *Warrick v. New Jersey Off. of Att'y Gen.*, 2022 WL 1763855, at *3–5 (D.N.J. May 31, 2022).

However, when alleging liability of individual actors under § 1981, the plaintiff must establish "some affirmative link to causally connect the actor with the discriminatory action."[9]

---

[9] A plaintiff may bring a § 1981 suit against individual defendants. *Venson*, 2021 WL 4963294, at

*Venson*, 2021 WL 4963294, at *2 (quoting *Suero*, 2017 WL 413005, at *6); *see also Aboudekika v. Delaware River & Bay Auth.*, 2011 WL 5080216, at *2 (D.N.J. Oct. 25, 2011) (quoting *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 75 (2d Cir. 2000)).  The Third Circuit has found individual liability under § 1981 if the defendants "are personally involved in the discrimination . . . , and if they intentionally caused [the employer] to infringe on [the plaintiff's] Section 1981 rights, or if they authorized, directed, or participated in the alleged discriminatory conduct." *Venson*, 2021 WL 4963294, at *4 (quoting *Al-Khazraji v. Saint Francis Coll.*, 784 F.2d 505, 518 (3d Cir. 1986), *aff'd*, 481 U.S. 604 (1987)) (alterations in original).

For pleading purposes, therefore, to demonstrate race-based discrimination based on failure to promote, a plaintiff must assert specific facts surrounding the alleged misconduct and not rely on conclusory allegations.  *Compare Doe v. Sizewise Rentals, LLC*, 530 F. App'x 171, 173 (3d Cir. 2013) (upholding district court's determination that the employees failed to plead intentional discrimination by their managers when the complaint was "devoid [] of factual allegations" to show that the defendants acted with discriminatory intent)) *and Emery*, 2021 WL 941879, at *5 (finding that the plaintiff Uber driver failed to plead discriminatory intent on disparate treatment claim when he used as comparators "nameless white drivers" who, like him, refused to submit to riders' advances, yet did not receive the same consequence as him); *with Warrick*, 2022 WL 1763855, at *3–5 (finding that the plaintiff sufficiently pled race-based discrimination and racially hostile work environment claims when she pointed to the lack of minorities in the employer's

---

*2. This is true even where the state employer, NJBPU, cannot be held liable.  *See Youssef v. Dep't of Health & Senior Servs.*, 423 F. App'x 221, 224 (3d Cir. 2011) (vacating district court's dismissal of § 1981 claim against individual employee of state agency, noting that 42 U.S.C. § 1981 "provide[s] for individual liability"); *cf. Al-Khazraji v. Saint Francis Coll.*, 784 F.2d 505, 518 (3d Cir. 1986), *aff'd*, 481 U.S. 604 (1987) (stating, "directors, officers, and employees of a corporation may become personally liable when they intentionally cause an infringement of rights protected by Section 1981, regardless of whether the corporation may also be held liable").

administrative staff and director positions, alleged specific instances where the employer provided particular similarly situated white employees opportunities to make them eligible for particular promotions, which the plaintiff did not get, and pointed to at least one individual defendant's actions "reprimand[ing]" the plaintiff and "inform[ing]" the plaintiff that she would not be transferred to her old position).

For example, in *Venson*, the court determined that the plaintiff "sufficiently pleaded that [the individual defendants] personally and intentionally engaged in discriminatory conduct" when the plaintiff alleged that one defendant "was a primary advocate of using racial slurs," and quoted another defendant's specific racial comments directed at black employees. *Id.* In *Aboudekika*, the court determined that a plaintiff's allegations that her supervisor "was informed of, but failed to investigate, the alleged discriminatory treatment, and subsequently personally terminated [the plaintiff], sufficiently demonstrate[d] [the individual defendant's] personal involvement, at the motion to dismiss stage, to satisfy the affirmative link requirement." 2011 WL 5080216, at *2.

Additionally, in *Warrick*, the Court determined that the plaintiff's § 1981 claim against individual defendants survived a motion to dismiss when the plaintiff alleged a lack of minorities in the employer's administrative staff and director positions, and pointed to particular instances when her supervisor made her ineligible for a promotion by not transferring her back to her previous position, and when particular similarly situated white employees received promotions or opportunities for promotions. 2022 WL 1763855, at *3–5. The plaintiff also included an extensive timeline with dates of the alleged misconduct, including when the plaintiff filed complaints against management, when the plaintiff was transferred, when and which of the defendants "reprimand[ed]" the plaintiff, and when and which "similarly situated Caucasian, younger (under forty years old) colleague[s]" received certain promotions. *Id.* at *3–5.

By contrast, in *Emery*, the court found that the plaintiff failed to plead facts to support a disparate treatment claim because the complaint provided only "a vague comparison with white Uber drivers, which was not sufficient to show that the comparator employees were "similarly situated [to the plaintiff] in all relevant respects."" 2021 WL 941879, at *5 (quoting *Wilcher*, 441 F. App'x at 882 ).  The court noted that, when determining whether employees are similarly situated, the court must undertake a "fact-intensive inquiry," considering factors such as "whether 'the two employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them.'"  *Id.* (quoting *McCullers v. Napolitano*, 427 F. App'x 190, 195 (3d Cir. 2011).  Accordingly, where the plaintiff Uber driver alleged that Uber discriminated against him by deactivating his account after he refused to "submit" to riders' "sexual fantasies/advances/schemes," the court determined that the plaintiff's comparators of "nameless 'white drivers' who remain with Uber despite refusing to 'submit' to riders' 'sexual fantasies/advances/schemes'" were insufficient to support an inference of discriminatory intent.  *Id.*  The court noted that plaintiff's allegation was "a bald assertion that [did] not contain any facts about such drivers, whether they ever experienced harassment from riders, or whether they are similarly situated in any relevant aspect." *Id.*

Here, Plaintiff has alleged instances where a "white male" received a promotion over Plaintiff, (*id.* 7–8); an instance where the position for which Plaintiff applied was "voided at the 11th hour," (*id.*); Defendants' "fail[ure] to perform the required Performance Assessment Reviews (PARS) denying Plaintiff an opportunity to build an official performance profile," (*id.* 8); the "Primary Defendant['s] fail[ure] to process, review and finalize the majority of [] Plaintiff's work product during the period 2010 thru 2017," (*id.*); the "den[ial of] legitimate travel expenses without

cause," (*id.* at 9); placement of a "litigation hold status on [] Plaintiff," (*id.*); and, in a "private meeting," the "threat[] to implement no salary increase" to the position of Chief, Bureau of Financial Audits, if Plaintiff accepted the position, (*id.*).   The SAC does not specify any one Defendant's involvement in the alleged actions, but rather refers to all Defendants as "Defendants," "all of the defendants," or the "Primary Defendant" throughout the SAC.[10]   (*See e.g.*, 2d Am. Compl. 8 ("[T]he Defendant notified [] Plaintiff he would not be offered the promotional opportunity but did not provide any other detail to support the failure to promote."); *id.* at 9 (noting "the Defendants" have "a clear pattern of discrimination against the Plaintiff"); *see id.* ("Primary Defendant's negligent failure to review or acknowledge or assign the Plaintiff's work product voids any defense claims involving or related to the Defendant's reasoning for failing to promote based on any performance or work-related rationalizations.").)   Unlike in *Venson*, or *Aboudekika*, where the plaintiff specified which individual defendants partook in the alleged discriminatory actions, here, Plaintiff does not specify statements or actions by any one of the Moving Defendants.   Thus, these allegations alone do not state a § 1981 claim that the Moving Defendants were personally involved in the alleged intentional discrimination.

To the extent Plaintiff specifies Defendants' involvement with the allegations in the SAC, Plaintiff has not done so sufficiently to demonstrate an "affirmative link" to the allegedly intentional discriminatory actions of failing to promote Plaintiff. *See Venson*, 2021 WL 4963294, at *2. Specifically, Plaintiff alleges that the NJBPU Commissioners were Plaintiff's "direct hiring authority," that Individual Defendant Richard Mroz is "a former commissioner and Commission President . . . who [led] the Commission for a majority of the period involving this complaint,"

---

[10] Plaintiff does not define "Primary Defendant" in the SAC, but in earlier complaints, notes that the NJBPU is the "Primary Defendant." (Compl. 10.)

that Individual Defendant Kenneth Sheehan is "a former Chief of Staff and current [] senior staff member," and Individual Defendant Malik Fahmi is "a former Director of Personnel/Administration in place during the majority of the period involving this complaint." (*See* 2d Am. Compl. 5.) In *Aboudekika*, the court elaborated that, to allege "personal involvement by a supervisor," a plaintiff may allege that the defendant "participated directly in the alleged [] violation," was informed of the alleged violation and "failed to remedy the wrong," created a "policy or custom" under which the alleged violation occurred, was "grossly negligent in supervising subordinates who committed the wrongful acts," or "exhibited deliberate indifference to the rights of [the plaintiff] by failing to act on information indicating that unconstitutional acts were occurring." 2011 WL 5080216, at *2. In *Doe v. Sizewise Rentals, LLC*, the Third Circuit affirmed a dismissal of a complaint against an individual manager, where the complaint alleged that the manager "executed 'racial plots,' 'favored non-minority employees,' and, along with [another employee], 'persecuted' them 'along with other Hispanics and Blacks.'" 530 F. App'x at 174. The Circuit noted that such allegations were "conclusory," and that the complaint was "devoid . . . of factual allegations indicating that the [] defendants acted with any racially discriminatory animus against Appellants." *Id.*

Similar to the plaintiff in *Doe v. Sizewise, LLC*, here, Plaintiff asserts that the NJBPU and Individual Defendants had a supervisory role over his hiring and promotions. 530 F. App'x at 174. However, Plaintiff's factual allegations referring to Defendants as a whole without allegations directed to any individual defendant, and Plaintiff's allegations noting that certain Defendants were in charge of hiring or on the NJBPU commission during the period specified in the SAC, are insufficient to provide an "affirmative link" between any one of the Moving Defendants and the alleged misconduct in the SAC. *See Venson*, 2021 WL 4963294; *Doe*, 530 F. App'x at 174.

Further, unlike in *Warrick*, where the plaintiff named at least one supervisor by name and alleged several instances where specific, similarly situated white employees received promotions or opportunities for promotions, *see* 2022 WL 1763855, at *3–5, here, Plaintiff states generally that "[t]he positions [he applied for] were awarded to white males [or candidates] of similar [or lesser] standing." (*See* 2d Am. Compl. 2, 7, 8, 11.) As the court noted in *Emery*, determining whether an employee is "similarly situated" is "fact intensive;" providing a "vague comparison" to a "nameless white [employee]" is insufficient to support an inference of intentional discrimination. *See* 2021 WL 941879, at *5. Similarly here, the Court cannot determine that Plaintiff has pled sufficient facts to support an inference of intentional discrimination for Defendants' failure to promote Plaintiff because Plaintiff has not asserted sufficient facts regarding the "white male candidates" to demonstrate that they were "similarly situated in all relevant respects." *See id.*

Accordingly, without alleging facts that any of the Moving Defendants were "personally involved" or "authorized, directed, or participated" in the alleged instances of discrimination, the Court cannot determine that Plaintiff plausibly alleged individual liability under § 1981. *Venson*, 2021 WL 4963294, at *4. And, without additional facts on the "white male candidates" of "equal" or "lesser" standing, the Court cannot determine whether Defendants' awarding those candidates the promotions for which Plaintiff applied gives rise to an inference of discriminatory intent. (*See* 2d Am. Compl. 3, 7–8.) Thus, while a plaintiff "need not make out a *prima facie* case" for a § 1981 claim at the motion to dismiss stage, here, Plaintiff has not "offer[ed] [] 'enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary elements of discrimination.'" *See Emery*, 2021 WL 941879, at *4 (quoting *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016)). The Court dismisses Plaintiff's § 1981 claims without

prejudice.

### C.    Individual Defendants — New Jersey Law Against Discrimination

The Court previously dismissed Plaintiff's NJLAD claims against the State Defendants on sovereign immunity grounds. (*See* 1st MTD Op. 9–10, 9 n.4; 2d MTD Op. 8.) Additionally, a "plaintiff cannot assert a NJLAD claim against . . . a state employee acting in his or her official capacity." *Hicks v. State of N.J. Dep't of Corr.*, 2017 WL 4858122, at \*4 (D.N.J. Oct. 27, 2017). Thus, to the extent that Plaintiff brings NJLAD claims against Defendants in their "official capacities," they are immune from suit. *See id.* (dismissing NJLAD claim against supervisor at New Jersey Department of Corrections ("DOC") after determining that DOC qualified as an "arm of the state" for the purposes of Eleventh Amendment immunity).

Plaintiff also brings NJLAD claims against Defendants as individuals. (2d Am. Compl. 10–14 (listing Counts I–XII, all alleging that Defendants acted "collectively or in an individual capacity").) NJLAD provides for individual liability through "aiding and abetting." *DeSantis v. N.J. Transit*, 103 F. Supp. 3d 583, 591 (D.N.J. 2015). Specifically, "NJLAD makes it unlawful for 'any person, whether an employer or an employee or not, to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this act.'" *Id.* (quoting N.J.S.A. § 10:5-12(e)). "To hold an employee liable as an aider and abettor, Plaintiff must show: (1) the employer whom the defendant aided performed a wrongful act causing an injury; (2) the defendant was generally aware of his role as part of an overall illegal or tortious activity at the time that he provided the assistance; and (3) the defendant knowingly and substantially assisted the principal violation." *Id.* (citing *Cicchetti v. Morris Cnty. Sheriff's Office*, 947 A.2d 636, 645 (2008) (citing *Hurley v. Atl. City Police Dep't*, 174 F.3d 95, 127 (3d Cir. 1999)).

While NJLAD allows for individual liability on aiding and abetting grounds, courts in this district have dismissed claims against state employees acting in their individual capacities. These courts reason, "individual liability does not exist under the NJLAD absent evidence that the individual was 'aiding and abetting' discrimination by the employer," and "[s]uch proof is impossible if the Court has no jurisdiction over the [state] employer." *Hughes v. State of N.J., Off. of Pub. Def./Dep't of Pub. Advoc.*, 2012 WL 761997, at *3 (D.N.J. Mar. 7, 2012) (citing *Hurley v. Atl. City Police Dept.*, 174 F.3d 95, 138 (D.N.J 1999) (Cowen, J., concurring in part)); *see also Hicks*, 2017 WL 4858122, at *4; *Shreve v. N.J. Motor Vehicle Comm'n*, 2016 WL 5334661, at *5 (D.N.J. Sept. 22, 2016); *Mitchell v. N.J. Lottery*, 2006 WL 1344092, at *12 (D.N.J. May 15, 2006); *Hanani v. State of N.J.*, 2005 WL 1308231, at *16 (D.N.J. May 31, 2005).

While at least one district court has found the other way, *see Uwalaka v. State of N.J.*, 2005 WL 3077685, at *3 (D.N.J. Nov. 15, 2005) ("The Court finds, therefore, that defendants Popkin, D'Oria, and Burgos, being sued in their individual capacity, may still be found liable for aiding and abetting violations under the NJLAD statute, even though the State employer, with whom they are accused of aiding and abetting, is immune from liability under the Eleventh Amendment."), the Court finds the reasoning of the majority of the courts persuasive. "An individual employee cannot be found liable for discrimination under NJLAD unless the employer [NJBPU] is first found liable." *Hanani*, 2005 WL 1308231, at *16. Here, where the NJBPU is immune from suit, "it would be impossible to establish that the alleged aiders and abetters, . . . are liable because a predicate finding that the [NJBPU] is liable cannot be made." *See id.* Thus, the Court dismisses with prejudice Plaintiff's NJLAD claims against the Moving Defendants in their individual capacities.

IV.    **CONCLUSION**

For the foregoing reasons, the Moving Defendants' Motion to Dismiss the Second Amended Complaint is **GRANTED**.  The Court grants Plaintiff fourteen (14) days to amend the Second Amended Complaint to address the deficiencies stated in this Opinion.  An appropriate Order will follow.


Date: <u>August 23, 2022</u>

GEORGETTE CASTNER, U.S.D.J.