NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MICHAEL DAVENPORT,<br><br>      Plaintiff,<br><br>  v.<br><br>JOSEPH FIORDALISO, *et al.*,<br><br>      Defendants. | Civil Action No. 18-13687 (GC) (JBD)<br><br>**MEMORANDUM OPINION** |

**CASTNER, U.S.D.J.**

  **THIS MATTER** comes before the Court upon the Motion to Dismiss the Third Amended Complaint (TAC).[1] (ECF No. 71.) Defendants Joseph Fiordaliso, Mary-Anna Holden, Dianne Solomon, Upendra Chivykula, Bob Gordon, Richard Mroz, Kenneth Sheehan, and Malik Fahmi move pursuant to Federal Rules of Civil Procedure ("Rules") 12(b)(1) and 12(b)(6). Plaintiff opposed, and Defendants replied. (ECF Nos. 77 & 81.) The Court has carefully considered the parties' submissions and decides the motion without oral argument pursuant to Rule 78(b) and Local Civil Rule 78.1(b). For the reasons set forth below, and other good cause shown, Defendants' motion is **GRANTED**.

---

[1]  The Court previously dismissed what it referred to as Plaintiff's "Second Amended Complaint." (ECF No. 67.) The newest iteration of the pleading, dated September 6, 2022, is referred to as the "Third Amended Complaint" to avoid confusion. (ECF No. 69.)

I.  **BACKGROUND**

On August 23, 2022, the Court issued a Memorandum Opinion dismissing *pro se* Plaintiff Michael Davenport's claims against several individual Defendants. (ECF No. 67.) The Court incorporates that decision, which recites this case's procedural history and factual background.[2]

Plaintiff is an African American man. (*Id.* at 3.) He worked for the New Jersey Board of Public Utilities (NJBPU) for more than thirty-three years in various capacities, including as an auditor and analyst. (*Id.* at 2-5.) Now retired, Plaintiff alleges that he was discriminated against when he was repeatedly denied promotions at the NJBPU.[3] (*Id.* at 3-5.)

Defendants are (1) five Commissioners of the NJBPU, Joseph Fiordaliso, Mary-Anna Holden, Dianne Solomon, Upendra Chivykula, and Bob Gordon; (2) three individuals who were affiliated with the NJBPU for a majority of the period involving Plaintiff's claims, Richard Mroz, former President and former Commissioner; Kenneth Sheehan, former Chief of Staff and senior staff member; and Malik Fahmi, former Director of Human Resources; and (3) two current or former New Jersey Department of Treasury Commissioners, Elizabeth Muoio and Andrew Sidamon-Eristof. (*Id.* at 2-3)

In its prior decision, the Court found that the Treasury Commissioners, Muoio and Sidamon-Eristof, had not been served and, thus, were not properly in the case. (*Id.* at 9.) That is unchanged. As to the remaining Defendants—the five Commissioners of the NJBPU (Fiordaliso, Holden, Solomon, Chivykula, and Gordon) and the three individuals affiliated with the NJBPU (Mroz, Sheeham, and Fahmi)—the Court dismissed Plaintiff's claims against them under 42

---

[2]   The decision can also be found at *Davenport v. New Jersey Bd. of Pub. Utilities*, Civ. No. 18-13687, 2022 WL 3636237 (D.N.J. Aug. 23, 2022).

[3]   Plaintiff no longer names the NJBPU directly as a defendant. (*See* ECF No. 69 at 1.)

U.S.C. § 1981 and the New Jersey Law Against Discrimination (NJLAD), N.J. Stat. Ann. § 10:5-12, *et seq.* (*Id.* at 10-23.)

The section 1981 claims for disparate treatment and hostile work environment, in Defendants' official capacities,[4] failed because the statute does not create a private right of action against state actors. (*Id.* at 11-12 (citing *Roper v. Van Mater*, Civ. No. 10-2229, 2011 WL 5557527, at *2 (D.N.J. Nov. 15, 2011)).) The personal capacity claims failed because Plaintiff had not "sufficiently . . . demonstrate[d] an 'affirmative link' to the allegedly intentional discriminatory actions." (*Id.* at 13-19.) In other words, Plaintiff's "factual allegations referring to Defendants as a whole without allegations directed to any individual" were inadequate to plausibly infer that "any one of the . . . Defendants" engaged in "the alleged misconduct." (*Id.* at 20.)

The NJLAD claims were also defective because such claims would require first finding that the employer organization had discriminated or retaliated. (*Id.* at 22-23.) Since the NJBPU is immune from suit in federal court under the NJLAD, a predicate finding of liability could not be made that would permit a derivative finding against the individual Defendants. (*Id.* at 23 (citing *Hanani v. State of N.J.*, Civ. No. 03-3111, 2005 WL 1308231, at *16 (D.N.J. May 31, 2005)).)

The TAC advances substantially similar factual allegations as those in the Second Amended Complaint. (*Compare* ECF No. 69, *with* ECF No. 59.) Plaintiff supplements to allege that in February 2016, he applied "for the positions of Chief, Bureau of Financial Audits . . . and Chief, Bureau of Management Audits" at NJBPU. (ECF No. 69 at 7-8.[5]) During the interview for the position of Chief, Bureau of Financial Audits, "no representative from human resources was

---

[4] Plaintiff brings certain claims against Defendants in either their official or personal capacities. Where this occurs, the Court refers to the claims as either "official capacity claims" or "personal capacity claims."

[5] Page numbers for record cites (*i.e.*, "ECF Nos.") refer to the page numbers stamped by the Court's e-filing system and not the internal pagination of the parties.

in attendance," which was "unprecedented." (*Id.* at 8.) Plaintiff viewed this as "a clear message . . . be[ing] sent by Malik Fahmi" that Plaintiff's "candidacy was not being taken seriously or considered." (*Id.*) The position was eventually awarded to William Foley, a "white male candidate without agency experience, direct subject matter experience or advanced standing." (*Id.* at 3, 8.)

Plaintiff also alleges that Kenneth Sheehan, then-NJBPU Chief of Staff, "fail[ed] to acknowledge, process, evaluate, and properly promote . . . Plaintiff's work product for an extended period for reasons based on race," including from 2010 through 2017. (*Id.* at 10.) Sheehan allegedly did not take steps to ensure that Black NJBPU employees received equal "face time" before the Commissioners, which was detrimental because such face time is "one of the most effective means to secur[e] promotion within the NJBPU." (*Id.*)

Generally, Plaintiff complains that the NJBPU Commissioners and the Treasury Commissioners "fell far short" of their duty "to ensure a safe, secure and legal work environment for all . . . employees." (*Id.* at 11.)

Plaintiff now asserts or reasserts claims for discrimination and/or hostile work environment based on race under 42 U.S.C. § 1981; 42 U.S.C. § 1983; the NJLAD; and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* (ECF No. 69 at 18.) On September 23, 2022, Defendants moved to dismiss. (ECF No. 71.) Plaintiff opposed, and Defendants replied. (ECF Nos. 77 & 81.)

## II.   LEGAL STANDARD

### A.   RULE 12(B)(1)—LACK OF SUBJECT MATTER JURISDICTION

Under Rule 12(b)(1), a party may bring a motion to dismiss for lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). There are two types of subject-matter challenges under Rule 12(b)(1): "either a facial or a factual attack." *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016). On a facial attack, the court "accept[s] the complaint's well pled allegations as true,

and review[s] 'the allegations of the complaint and documents referenced therein and attached thereto[] in the light most favorable to the plaintiff.'" *Manivannan v. United States Dep't of Energy*, 42 F.4th 163, 169 (3d Cir. 2022) (quoting *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000)). On a factual attack, "the court 'is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case.'" *Davis*, 824 F.3d at 346 (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)).

### B.  RULE 12(B)(6)—FAILURE TO STATE A CLAIM

On a motion to dismiss for failure to state a claim, courts "accept the factual allegations in the complaint as true, draw all reasonable inferences in favor of the plaintiff, and assess whether the complaint and the exhibits attached to it 'contain enough facts to state a claim to relief that is plausible on its face.'" *Wilson v. USI Ins. Serv. LLC*, 57 F.4th 131, 140 (3d Cir. 2023) (quoting *Watters v. Bd. of Sch. Directors of City of Scranton*, 975 F.3d 406, 412 (3d Cir. 2020)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Clark v. Coupe*, 55 F.4th 167, 178 (3d Cir. 2022) (quoting *Mammana v. Fed. Bureau of Prisons*, 934 F.3d 368, 372 (3d Cir. 2019)). When assessing the factual allegations in a complaint, courts "disregard legal conclusions and recitals of the elements of a cause of action that are supported only by mere conclusory statements." *Wilson*, 57 F.4th at 140 (citing *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 903 (3d Cir. 2021)). The defendant bringing a Rule 12(b)(6) motion bears the burden of "showing that a complaint fails to state a claim." *In re Plavix Mktg., Sales Pracs. & Prod. Liab. Litig. (No. II)*, 974 F.3d 228, 231 (3d Cir. 2020) (citing *Davis*, 824 F.3d at 349).

**III. DISCUSSION**

    **A. TITLE VII**

Defendants argue that Plaintiff's Title VII claims should be dismissed because (1) individual Defendants are not "employers" who can be held liable, and (2) Plaintiff "has not exhausted the administrative remedies that are required before filing a Title VII complaint." (ECF No. 71-1 at 12.)

In opposition, Plaintiff acknowledges that it "is generally true" that individuals are not liable under Title VII, but he asks the Court to make an exception, citing to an opinion from the Eastern District of Michigan, *Shpargel v. Stage & Co.*, 914 F. Supp. 1468 (E.D. Mich. 1996). (ECF No. 77 at 3-4.) Plaintiff also claims that sometime in 2018 he filed a charge with the Equal Employment Opportunity Commission (EEOC), but "[a]fter waiting approximately [three] months" and due to the EEOC cancelling a planned appointment, he chose to proceed without exhausting administrative remedies. (*Id.* at 4.)

It "is settled law in this Circuit that Title VII does not provide for individual liability, and thus individuals cannot be named as defendants in Title VII cases." *Zangara v. Nat'l Bd. of Med. Examiners*, Civ. No. 22-1559, 2023 WL 6533467, at *9 n.7 (D.N.J. Oct. 6, 2023) (citing *Newsome v. Admin. Off. of the Cts. of the State of New Jersey*, 51 F. App'x 76, 79 n. 1 (3d Cir. 2002)); *see also Slater v. Yellen*, Civ. No. 23-1091, 2023 WL 6457818, at *2 (3d Cir. Oct. 4, 2023) ("[W]e agree with the District Court's dismissal of the complaint as against them because 'individual employees are not liable under Title VII.'" (citation omitted)); *Murray v. Cnty. of Hudson*, Civ. No. 17-2875, 2023 WL 6785081, at *14 (D.N.J. Oct. 13, 2023) ("Third Circuit jurisprudence is clear that Title VII does not subject individual supervisory employees to liability . . . ." (collecting cases)).

6

Plaintiff's reliance on the district court's decision in *Shpargel* is unavailing for two reasons. For one, this Court is bound by precedent from the United States Court of Appeals for the Third Circuit, which holds that individual employees are not independently liable under Title VII. *See Zangara*, 2023 WL 6533467, at *9 n.7. For another, the court in *Shpargel* also found that "Title VII does not provide for liability against individuals being sued in their individual capacity." 914 F. Supp. at 1478. Its only qualification was that an employer could be liable, via *respondeat superior*, for the official acts of its agents in their official capacities. *Id.* Because Plaintiff brings suit here against individual Defendants, not their employer, even *Shpargel* does not support his position. *See id.* ("More telling, are the consistent holdings of other circuits that there is no liability against individuals in their individual capacities under Title VII or similar antidiscrimination statutes." (collecting cases)). Accordingly, the Court dismisses the Title VII claims with prejudice.[6]

### B. NJLAD

Unlike Title VII, individual liability under the NJLAD exists in the limited circumstance of "an aiding and abetting theory of liability." *Okparaeke v. Newark Bd. of Educ.*, Civ. No. 20-16149, 2023 WL 4418599, at *4 n.8 (D.N.J. July 10, 2023) (collecting cases); *Prioli v. Cnty. of Ocean*, Civ. No. 18-00256, 2021 WL 4473159, at *23 (D.N.J. Sept. 30, 2021) ("The aiding and abetting liability in the NJLAD has no counterpart in Title VII."). For "an aiding and abetting theory," a plaintiff must establish first that "the employer whom the defendant aided performed a wrongful act causing an injury." *DeSantis v. New Jersey Transit*, Civ. No. 14-3578, 2017 WL 5050039, at *10 (D.N.J. Nov. 3, 2017), *aff'd*, 756 F. App'x 197 (3d Cir. 2019).

Here, the personal capacity NJLAD claims fail because, as the Court has explained, the

---

[6] Because this ground for dismissal is well established, the Court does not reach the alternative issue of administrative exhaustion.

NJBPU is immune from suit in federal court. (*See* ECF No. 67 at 23.) It is "'impossible to establish that the alleged aiders and abett[o]rs, [the individual defendants,] are [personally] liable because a predicate finding that the [NJBPU] is liable as a principal cannot be made.'" *Mitchell v. New Jersey Lottery*, Civ. No. 04-896, 2006 WL 1344092, at *12 (D.N.J. May 15, 2006) (quoting *Hanani v. State of N.J.*, Civ. No. 03-3111, 2005 WL 1308231, at *16 (D.N.J. May 31, 2005)); *see also Tourtellotte v. Eli Lilly & Co.*, 636 F. App'x 831, 856 (3d Cir. 2016) ("The NJLAD does not provide for individual liability for aiding and abetting if the employer is not found liable."). Ultimately, an individual "defendant cannot assist in or abet a principal violation unless there is a principal violation." *DeSantis*, 2017 WL 5050039, at *11; *see also Kumar v. State of New Jersey*, Civ. No. 20-13927, 2021 WL 3769280, at *11 (D.N.J. Aug. 25, 2021) (Wolfson, C.J.) ("Under the NJLAD, an employer must be found liable for discriminatory employment practices before an employee can be found liable."); *Hicks v. State of NJ Dep't of Corr.*, Civ. No. 16-0927, 2017 WL 4858122, at *4 (D.N.J. Oct. 27, 2017) ("Plaintiff cannot prove the DOC violated the NJLAD. Consequently, she cannot prove [the individual defendant] aided and abetted the DOC's violation.").

The official capacity NJLAD claims also fail because a "plaintiff cannot assert a NJLAD claim against . . . a state employee acting in his or her official capacity." *Hicks*, 2017 WL 4858122, at *4 (citing *Garcia v. Richard Stockton Coll. of New Jersey*, 210 F. Supp. 2d 545, 550 (D.N.J. 2002)); *see also Pena v. Div. of Child & Fam. Servs.*, Civ. No. 08-1168, 2010 WL 3982321, at *5 (D.N.J. Oct. 8, 2010) (Bumb, C.J.) ("Sovereign immunity extends to cover individual officials sued in their official capacities because 'a judgment against a public servant in his official capacity imposes liability' on the state, which sovereign immunity was meant to prevent in the first place." (quoting *Kentucky v. Graham*, 473 U.S. 159, 169 (1985))). Accordingly, the Court dismisses the NJLAD claims with prejudice.

C. SECTION 1981

To the extent Plaintiff reasserts his section 1981 claims against the individual Defendants in their official capacities, those claims are dismissed with prejudice because "[s]ection 1981 does not create a private right of action . . . against a state actor." *LeCadre v. Pennsylvania Off. of Att'y Gen.*, Civ. No. 21-00997, 2023 WL 6450510, at *11 (M.D. Pa. Sept. 29, 2023); *see also Ford v. Se. Pennsylvania Transp. Auth.*, 374 F. App'x 325, 326 (3d Cir. 2010) ("No private right of action lies against a state actor under § 1981."); *Sharard v. Berks Cnty.*, Civ. No. 12-2393, 2012 WL 6838952, at *5 (M.D. Pa. Dec. 6, 2012), *report and recommendation adopted*, 2013 WL 132518 (M.D. Pa. Jan. 10, 2013) ("Plaintiff can only sue the state actor Defendants for damages [under section 1981] in their individual or personal capacities.").

As to Plaintiff's assertion that the individual Defendants violated section 1981 in their personal capacities, the Court will analyze these claims under the framework of section 1983. While section 1981 "confers the substantive right," section 1983 "allows a plaintiff to bring a civil action to recover against any person . . . that, while 'acting under color of state law,' infringes on that right or any other 'secured by the Constitution or laws of the United States.'" *Gilmore v. Reilly*, Civ. No. 09-5956, 2010 WL 1462876, at *6 (D.N.J. Apr. 9, 2010) (quoting 42 U.S.C. §§ 1981, 1983); *McGovern v. City of Philadelphia*, 554 F.3d 114, 116 (3d Cir. 2009) ("[W]hile § 1981 creates *rights*, § 1983 provides the *remedy* to enforce those rights against state actors." (emphases in original)). As a result, section 1981 claims are properly asserted via section 1983. *See Wooden v. Pennsylvania Liquor Control Bd.*, Civ. No. 13-3498, 2015 WL 1344756, at *3 (E.D. Pa. Mar. 25, 2015) ("[C]laims of discrimination and retaliation based on § 1981 may properly be asserted against state officials acting in their individual capacities pursuant to § 1983."); *Tucker v. Sch. Bd. of the City of Virginia Beach*, Civ. No. 13-530, 2014 WL 5529723, at *10 (E.D. Va. Oct. 31, 2014) ("While the Third, Fifth, Sixth, Tenth, and Eleventh Circuits have

held in agreement with the Fourth Circuit, only the Ninth Circuit has held that § 1981 can provide a cause of action against a state actor independent of § 1983.").

### D. SECTION 1983

The NJBPU is immune from suit under section 1983 based on Eleventh Amendment sovereign immunity. (*See* ECF No. 17 at 6-8.) This immunity applies equally to the official capacity claims against individuals because they stand in the shoes of their employer—an official capacity suit "is no different from a suit against the State itself."[7] *Allen v. New Jersey State Police*, 974 F.3d 497, 506 (3d Cir. 2020) (quoting *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989)). As to the personal capacity claims against the individual Defendants, the Court will examine whether Plaintiff has pleaded enough factual matter to state a claim for either disparate treatment or hostile work environment against any individual.[8]

#### 1. DISPARATE TREATMENT—FAILURE TO PROMOTE

Plaintiff's disparate treatment claim for failure to promote is based on the allegation that, in 2016, he applied and was interviewed for the position of Chief, Bureau of Financial Audits, but the position was given to a "white male candidate without agency experience, direct subject matter

---

[7] In opposition, Plaintiff argues that immunity should not apply because he makes a request for prospective injunctive relief (otherwise known as the *Ex parte Young* exception). As the Court found, however, Plaintiff does not allege any ongoing violations of federal law, and he retired from his position and is no longer employed by the NJBPU. (ECF No. 67 at 11 n.5 (citing *Roper v. Van Mater*, 2011 WL 5557527, at *2 (D.N.J. Nov. 15, 2011)).) Further, Plaintiff cannot individually assert claims for prospective injunctive relief on behalf of unnamed former co-workers. *See, e.g.*, *Warth v. Seldin*, 422 U.S. 490, 499 (1975) ("[T]he plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.").

[8] The Court previously noted that Plaintiff has "not allege[d] that he engaged in a 'protected activity' to support a claim of retaliation." (ECF No. 67 at 13 n.7.)

experience or advanced standing."[9] (ECF No. 69 at 3, 8.) Plaintiff does not identify who was responsible for deciding on the candidate ultimately hired. The only individual-specific allegation is that Malik Fahmi, then-Human Resources Director, did not send a human resources representative to attend Plaintiff's job interview and that this omission was a signal that Plaintiff's "candidacy was not being taken seriously or considered." (*Id.* at 8.) More broadly, Plaintiff alleges that Kenneth Sheehan, then-NJBPU Chief of Staff, did not take steps to ensure that Black NJBPU employees received equal "face time" before the Commissioners, which was detrimental because such face time is "one of the most effective means to secur[e] promotion within the NJBPU." (*Id.*)

"To state a claim for disparate treatment . . . , a plaintiff must plausibly allege: '(1) that [he] is a member of a racial minority; (2) [an] intent to discriminate on the basis of race by the defendant; and (3) discrimination concerning one or more of the activities enumerated in the statute.'" *Emery v. Uber Techs., Inc.*, Civ. No. 20-05156, 2021 WL 941879, at *4 (D.N.J. Mar. 12, 2021) (quoting *Brown v. Philip Morris Inc.*, 250 F.3d 789, 797 (3d Cir. 2001)). For individual liability, a plaintiff must demonstrate that the person sued was personally involved in the unlawful conduct. *See Ismail v. Honeywell Int'l, Inc.*, Civ. No. 21-00143, 2023 WL 2385135, at *5 (M.D. Pa. Mar. 6, 2023) ("Liability . . . is personal in nature . . . and cannot be imposed vicariously." (quoting *Boykin v. Bloomsburg Univ. of Pennsylvania*, 893 F. Supp. 378, 394 (M.D. Pa. 1995), *aff'd*, 91 F.3d 122 (3d Cir. 1996))); *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir.

---

[9] Plaintiff alleges that he applied for promotions on other occasions, but he does not identify anything about the qualifications of the persons of "similar" or "lesser" standing supposedly hired instead. *See Smith v. Philadelphia Works Inc.*, Civ. No. 22-1458, 2022 WL 16553381, at *3 (E.D. Pa. Oct. 31, 2022) ("[W]ithout any facts as to [person who was hired's] qualifications for the roles, it is just as plausible that she received the promotions because she was more qualified than [the plaintiff] for the jobs."). Nor does Plaintiff specifically allege how Defendants were involved in those decisions.

1988) ("A defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*.").

Courts dismiss section 1981 and 1983 claims against individual defendants where the defendant's alleged conduct is not connected to a constitutional deprivation. For example, in *Lei Ke v. Drexel University*, the plaintiff alleged that he was discriminated against based on his race and national origin and that the discrimination led to his dismissal from Drexel University's College of Medicine. Civ. No. 11-6708, 2013 WL 1092661, at *1 (E.D. Pa. Mar. 14, 2013). The suit named Drexel's president in his personal capacity, accusing him of intentional discrimination and retaliation. *Id.* at *14. The president had allegedly promised to review the plaintiff's matter but never looked into it and exhibited deliberate indifference to the discrimination that the plaintiff faced. *Id.* The district court found such allegations insufficient to establish a violation of § 1981 because the plaintiff had not "allege[d] that [the president] personally intended to discriminate . . . on the basis of . . . race or national origin" and the plaintiff had not "put forth any facts alleging that [the president] played a role in dismissing [the plaintiff] from" Drexel's College of Medicine. *Id.* at *15.

Similarly, in *Adams v. University of Maryland at College Park*, the plaintiff was an African American employee who worked at the University of Maryland as a carpenter and in the structural trades. Civ. No. 00-3177, 2001 WL 333095, at *1 (D. Md. Mar. 6, 2001). The plaintiff alleged that he applied for a promotion and that "a white employee with less experience and a record of violent and abusive conduct was selected over him." *Id.* As a result, the plaintiff sued, including against the University's Assistant Vice President for Facilities Management in his personal capacity. *Id.*

Dismissing the section 1981 and 1983 claims, the district court found that the allegations that the Assistant Vice President had "maintained a practice of promoting white employees over

12

qualified African American employees," and "[u]nder this practice, . . . [the plaintiff] was denied a promotion because of his race," were "insufficient to impose personal liability." *Id.* at *4. The court underscored that there were "no allegations identifying [the defendant's] actual participation in the decision to deny [the plaintiff's] application for promotion or indicating his actual or constructive notice of the alleged racial discriminatory promotional system and his failure to take corrective measures." *Id.* "Beyond [the plaintiff's] own charge," wrote the court, "the complaint fail[ed] to identify multiple incidents of the denial of promotions to qualified African-Americans in the Facilities Management division that could support imposing supervisory liability pursuant to a policy or custom of racially discriminatory employment practices." *Id.*

In contrast, where a plaintiff alleges that an individual defendant controlled or was directly involved in the discriminatory decision, courts have permitted section 1981 and 1983 claims to be maintained. For example, in *Baldwin v. Gramiccioni*, the plaintiff was an African American man who accused his supervisor in the Monmouth County Prosecutor's Office of "intentionally refus[ing] to promote [the] [p]laintiff to the position of Detective Sergeant on numerous occasions based on his race; instead, [he] ha[d] chosen to promote underqualified Caucasian officers." Civ. No. 16-1675, 2017 WL 120643, at *1 (D.N.J. Jan. 11, 2017). The plaintiff "allege[d] that [the supervisor] was the final decisionmaker with respect to promotions . . . and that he not only possessed knowledge of this discriminatory promotion practice, but actually participated in the activities resulting in the violation of constitutional rights." *Id.* at *8. This participation included the supervisor "proverbially plac[ing] his thumb on the scale in order to tip the balance in favor of Caucasian employees and against [the] [p]laintiff and other African American employees at the MPCO." *Id.* Based on these specific allegations, the district court found that the plaintiff had plausibly pleaded § 1983 personal capacity claims against the supervisor. *Id.*

Here, Plaintiff does not allege that any individual Defendant, including Fahmi and Sheehan, was involved in the decision to deny Plaintiff the position of Chief, Bureau of Financial Audits, at the NJBPU. The closest Plaintiff gets is to claim that Fahmi did not send a representative from human resources to Plaintiff's interview. This lone allegation is insufficient to infer that Fahmi intended to discriminate based on race or played a role in not promoting Plaintiff. Nor does Plaintiff identify any examples, beyond his own, where qualified Black applicants were denied promotions and that would support the inference that there was a policy or pattern of racially discriminatory employment practices at the NJBPU. Plaintiff accuses Sheehan of not providing Black employees at the NJBPU with equal face time before the Commissioners, but there are no particularized allegations for the Court to reasonably infer that anyone other than Plaintiff had not received promotions sought. Accordingly, the section 1981 and 1983 claims for disparate treatment against the individual Defendants in their personal capacities are dismissed.

### 2. HOSTILE WORK ENVIRONMENT

As to a hostile work environment, Plaintiff does not allege that anyone at the NJBPU ever used a racial slur or made a racist remark or threat. Instead, his theory appears to be that by failing to promote him, failing to seriously consider his applications for promotion, acting to frustrate his attempts for management level opportunities, denying his "legitimate" travel expenses, placing a litigation hold, and failing to offer him greater professional support, the NJBPU fostered a racially hostile environment. (ECF No. 69 at 8-11.) Specifically, Plaintiff alleges that Sheehan "fail[ed] to acknowledge, process, evaluate, and properly promote . . . Plaintiff's work product for an extended period," including from 2010 through 2017, and that it was due to Plaintiff's race. (*Id.* at 10.) Sheehan is further alleged to have denied Plaintiff and others "face time" with the NJBPU's Commissioners. (*Id.*)

"To establish a cause of action based on a hostile work environment, a plaintiff must plead allegations to support 'that the complained-of conduct (1) would not have occurred but for the employee's protected status, and was (2) severe or pervasive enough to make a (3) reasonable person believe that (4) the conditions of employment have been altered and that the working environment is hostile or abusive.'" *Doe v. Sizewise Rentals, LLC*, Civ. No. 09-3409, 2010 WL 4861138, at *6 (D.N.J. Nov. 22, 2010) (quoting *Shepherd v. Hunterdon Developmental Ctr.*, 803 A.2d 611, 625 (N.J. 2002)).

After careful review, the Court finds that Plaintiff's allegations do not rise to the level to connect Sheehan to a plausible hostile work environment claim. Often, such claims involve objectionable and clearly hostile comments or threats of a racist nature. *See, e.g.*, *Brown v. Joel Tanis & Sons, Inc.*, Civ. No. 13-02984, 2014 WL 2705262, at *2–3 (D.N.J. June 13, 2014) (finding "frequent and continual use of" racial slurs "combined with numerous other threats and racist remarks" to plausibly state claim for hostile work environment). This is because a hostile work environment is one so "permeated with 'discriminatory intimidation, ridicule, and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)); *Castleberry v. STI Grp.*, 863 F.3d 259, 264 (3d Cir. 2017) ("Whether an environment is hostile requires looking at the totality of the circumstances, including: 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" (citation omitted)).

Here, Plaintiff does not point to overtly discriminatory comments or actions. And allegations like those asserted here—that Plaintiff was ignored, treated rudely and/or discourteously, and was frustrated in obtaining a promotion—have generally been found

15

insufficient on their own to state a hostile work environment claim. *See, e.g.*, *Wright v. Providence Care Ctr., LLC*, 822 F. App'x 85, 97 (3d Cir. 2020) ("Occurrences such as being ignored, told once to 'shut up,' hearing an offhand comment about collecting disability, being temporarily pulled to work on another floor at the facility, receiving a marginally negative performance review without cause, and scheduling annoyances, while no doubt unpleasant, are not objectively 'extreme,' as is required for a viable . . . hostile workplace claim."); *Davis v. City of Newark*, 285 F. App'x 899, 903 (3d Cir. 2008) (affirming dismissal of a racial hostile work environment claim where the plaintiff was wrongly disciplined several times, called "a pain in my balls," ignored by co-workers who spoke only Spanish in her presence, had her tires slashed, and was eventually transferred from her squad); *see also Nelatury v. Pennsylvania State Univ.*, 633 F. Supp. 3d 716, 736 (W.D. Pa. 2022) ("The allegations do not reach th[e] threshold [for hostile work environment]. [The plaintiff] does not allege insulting comments, taunting, the display of offensive cartoons, or the like. Being denied promotion and the opportunity to supplement a dossier does not create a workplace 'permeated with . . . intimidation, ridicule, and insult.'" (quoting *Morgan*, 536 U.S. at 116)); *Wolverton v. Goodyear Tire & Rubber Co.*, Civ. No. 13-2782, 2015 WL 851779, at *6 (D.N.J. Feb. 26, 2015) ("[A]n 'unhappy' workplace does not equate to a hostile work environment." (quoting *Dunkley v. S. Coraluzzo Petroleum Transporters*, 98 A.3d 1202, 1212 (N.J. Super. Ct. App. Div. 2014))).

Ultimately, while the Court appreciates that Plaintiff's workplace may have been a frustrating environment, the factual matter pleaded does not allow the Court to plausibly infer that Plaintiff was subjected to discrimination by one of the individual Defendants or that Plaintiff was subjected to a hostile work environment. *See Doe v. Sizewise Rentals, LLC*, 530 F. App'x 171, 174 (3d Cir. 2013) ("The complaint is replete with details of a workplace where Appellants, particularly Doe, felt undervalued and overworked, and . . . allegedly undertrained. It is devoid,

however, of factual allegations indicating that . . . [the] defendants acted with any racially discriminatory animus against Appellants.").

IV.     **DISMISSAL WITH PREJUDICE**

Since initiating this action in September 2018, Plaintiff has been allowed to file four different pleadings. (ECF Nos. 1, 30, 59, 69.) In the Court's August 2022 Memorandum Opinion, it instructed Plaintiff as to what would have to be pleaded to maintain claims against the individual Defendants. Despite this guidance, Plaintiff has still failed to set forth claims upon which relief can be granted. Therefore, the Court finds it appropriate at this time to dismiss Plaintiff's claims against the individual Defendants with prejudice. *See Henry v. City of Allentown*, Civ. No. 12-1380, 2013 WL 6409307, at *2 (E.D. Pa. Dec. 9, 2013) ("Although the grant of a motion to dismiss is usually without prejudice, a District Court may exercise its discretion and refuse leave to amend if such amendment would be futile, particularly when a plaintiff has had multiple opportunities to improve the pleadings.").

V.      **CONCLUSION**

For the reasons set forth above, and other good cause shown, Defendants' Motion to Dismiss (ECF No. 71) Plaintiff's Third Amended Complaint (ECF No. 69) is **GRANTED**. An appropriate Order follows.

Dated: January 30, 2024

*/s/ Georgette Castner*
GEORGETTE CASTNER
UNITED STATES DISTRICT JUDGE

17